554 So.2d 1261 (1989)
HANOVER INSURANCE COMPANY
v.
ALLSTATE INSURANCE COMPANY, et al.
Robert Scott WOODRUFF
v.
BAYOU STATE MOBILE HOMES, INC. and Hanover Insurance Company.
Nos. CA 88-1898, CA 89-0801.
Court of Appeal of Louisiana, First Circuit.
November 15, 1989.
Rehearing Denied December 15, 1989.
*1262 Joseph B. Guilbeau, New Orleans, for Hanover Ins. Co.
John W. Perry, Baton Rouge, for Allstate Ins. Co., et al.
James R. Coxe, III, Baton Rouge, for Robert Scott Woodruff.
Denis Paul Juge, New Orleans, for Bayou State Homes, Inc., et al.
Before EDWARDS, LANIER and FOIL, JJ.
FOIL, Judge.
In these worker's compensation cases, we are asked to review the rulings of the lower courts with respect to entitlement to compensation benefits, the right of the compensation insurer to obtain reimbursement from a third party tortfeasor, and the assessment of penalties and attorney's fees in the litigation.

FACTS
These appeals arose from two lawsuits, one filed in the 19th Judicial District and the other filed in the 21st Judicial District. In the first lawsuit, Hanover Insurance Company (Hanover) sought reimbursement from Allstate Insurance Company (Allstate) for worker's compensation benefits it paid to and on behalf of Robert Woodruff. Robert Woodruff filed the second lawsuit against his former employer, Bayou State Mobile Homes, Inc., (Bayou State) and Hanover, Bayou State's compensation carrier, seeking reinstatement of compensation benefits. Following adverse rulings in both lawsuits, Hanover appealed the decisions, and this court consolidated the appeals.
Most of the facts in these cases have been stipulated to by the parties, and thus are not in dispute. Robert Woodruff was employed by Bayou State as a service mechanic. On November 20, 1985, while Woodruff was cutting siding for placement on a mobile home, the tip of the knife broke and sliced into his knee. On February 4, 1986, Woodruff saw Dr. John Loupe, an orthopedic surgeon, complaining of intermittent catching and locking of his left knee, accompanied by fluid accumulation. The doctor diagnosed an incomplete tear of the medial meniscus and performed a medial menisectomy, removing the tear. Despite the doctor's advice to the contrary, Woodruff returned to full duties at work, and on March 26, 1986, twisted his left knee while carrying a heavy jack and reinjured the knee. Soon thereafter, Dr. Loupe found that Mr. Woodruff had torn a ligament in his left knee, and on April 1, 1986, performed a ligament reconstruction, stapling the ligament to the bone. Following this surgery, Woodruff did not return to work, and started receiving compensation benefits from Hanover.
The parties stipulated that these two knee injuries occurred in the course and scope of Woodruff's employment with Bayou State, and the second injury aggravated the initial knee injury. On June 26, 1986, when Woodruff was not at work, and thus was not in the course and scope of his employment with Bayou State, he was involved in an automobile collision. Woodruff was a passenger in a vehicle which collided with a vehicle driven by Roberta Berthelot. Woodruff slammed his left knee against the glove compartment during the impact. Allstate provided Berthelot with liability insurance.
The parties stipulated that Woodruff had not fully recovered from the April 1 surgery at the time of this accident, and he visited Dr. Loupe on numerous occasions thereafter. The doctor opined that Woodruff had pulled a tendon loose in his left knee, and a second ligament reconstruction was performed on June 22, 1987.
On July 8, 1987, while still in the cast from the third surgery, Woodruff was involved *1263 in a second vehicular accident which, again, did not occur in the course and scope of employment with Bayou State. In this accident, Woodruff reinjured his left knee, necessitating a fourth surgery, which was performed on January 26, 1988.
The parties also stipulated that Woodruff settled his claim arising out of the first vehicular accident with Allstate, releasing Allstate and its insured, Roberta Berthelot, by an act of release dated December 30, 1986, for the sum of $12,500.00. This settlement was entered into without the consent and approval of Bayou State or Hanover. Regarding the second vehicular accident, a lawsuit filed by Woodruff is currently pending in federal court, in which Woodruff has complied with the appropriate notice provisions with respect to Hanover.
Hanover terminated benefits on July 5, 1988, citing as justification the June 26, 1986, automobile accident and the December 30, 1986, settlement without its consent. Subsequently, Hanover filed a lawsuit against Allstate, seeking reimbursement for compensation benefits and medical expenses paid on behalf of Woodruff from June 26, 1986, the date of the first automobile accident, until July 8, 1987, the date of the second vehicular collision. The parties stipulated that Allstate's insured was at fault in causing the June 26 accident. They also stipulated that during the period from June 26, 1986, through July 8, 1987, Hanover paid $13,578.43 in compensation to Woodruff, and $22,706.80 in medical expenses on behalf of Woodruff. Thereafter, Woodruff filed a lawsuit against Hanover and Bayou State, seeking reinstatement of compensation benefits. The cases were tried in different judicial districts.
Regarding Hanover's suit, Judge William Brown ruled that Hanover was not entitled to reimbursement from the third party tortfeasor. In Woodruff's suit, however, Judge Kenneth Fogg ruled that the aggravation of the work-related injury in the automobile accident was compensable, for worker's compensation purposes, and therefore, Hanover was obligated to continue paying compensation benefits until the disability ended. The trial judge further found that Woodruff did not forfeit his right to future compensation by entering into the settlement with Allstate without notifying Hanover. The judge ruled Woodruff was temporarily totally disabled, and ordered Hanover to pay compensation benefits from the date of termination until the date the disability ended. Finally, the judge concluded Hanover acted arbitrarily in terminating compensation benefits, and awarded Woodruff penalties and attorney's fees. Hanover appealed the adverse judgments in both suits.

TERMINATION OF COMPENSATION BENEFITS
Hanover justifies the termination of benefits on two grounds. First, it argues that the aggravation of Woodruff's on-the-job knee injuries in the June 26, 1986, automobile accident was not compensable because the accident constituted an intervening, superceding event, releasing it from responsibility for the original work injuries. Secondly, Hanover contends that by entering into a settlement with the third party tortfeasor without its consent, on December 30, 1986, Woodruff forfeited his right to "future compensation" benefits. These arguments will be addressed in turn.
A. Compensability of the June 26, 1986 accident.
Woodruff and Hanover stipulated at trial that the off-the-job June 26, 1986, accident occurred before Woodruff had fully recovered from the second surgery necessitated by the second work injury. Our review of the testimony of Dr. Loupe, submitted through three depositions, reveals the following: After the second work accident, Dr. Loupe performed a ligament reconstruction on Woodruff's knee. The doctor explained that in this type of surgical procedure, the ligament is stapled to the bone. He testified that if the surgery is successful, the ligament will eventually grow into the bone, thereby resulting in increased strength and stability in the *1264 knee. He stated that it takes from three to six months for the ligament-bone attachment to occur, and may have taken longer in a case like Woodruff's, because his knee was already in a weakened state as a result of the first surgery. Critical to this healing process, he revealed, is that the ligament not be disturbed. He stressed that during the period of attachment, the knee is highly susceptible to injury or reinjury.
Dr. Loupe testified that Woodruff's knee was more susceptible to injury in the automobile accident because of the two work injuries. He pointed to the already weakened condition of the knee, brought on by the two work injuries and resulting surgeries. Further, he stressed that the requisite healing period following the second surgery had not passed when Woodruff was involved in the automobile accident. He believed that the automobile accident aggravated the injuries sustained by Woodruff at work, resulting in further instability of the knee and requiring additional surgery.
Had the automobile accident not occurred, Dr. Loupe opined, Woodruff would have been able to return to work in August, 1986, four months following the April 1, 1986, surgery. In a later deposition, however, he stated that this estimate was too short, and surmised Woodruff could have returned to work one year following the surgery. Dr. Loupe stated that prior to the automobile accident, Woodruff's knee had been progressing satisfactorily, but afterwards, the condition became one of gradual deterioration. He explained that each time surgery is performed on a knee, the knee naturally becomes more unstable, because the tissues stretch and it is impossible to reconstruct all of the tissues around the knee.
Dr. Loupe was asked to give a disability rating following each of the events in which Woodruff injured or reinjured his knee. Following the first work-related accident and surgery, Woodruff had a 10-15% permanent physical impairment in his lower leg. Following the second surgery, that figure changed to a 25% impairment. After the third surgery, necessitated by the June 26, 1986, automobile accident, Woodruff's impairment increased to 35%. At present, he has a 50% permanent physical impairment in his lower leg. The doctor explained, however, that he was unable to apportion Woodruff's present functional disability among the two off-the-job vehicular accidents, and stated the best he could say was that each accident increased Woodruff's disability and functional impairment.
Hanover contends that benefits were not owed to Woodruff following the June 26, 1986, accident because it was an intervening event which broke the chain of causation between the work injuries and the post-automobile accident disability. Hanover focuses on Dr. Loupe's testimony that Woodruff could have returned to work within a year following the surgery, and that prior to the accident, his prognosis was one of gradual recovery but changed to steady deterioration following the accident.
We reject this argument. It is well settled that when a work-related injury is subsequently exacerbated, the aggravation is regarded as a development of the initial accident, and not an intervening cause, even though it occurs away from work and even after the employment is terminated. It is thus a compensable injury, for worker's compensation purposes, thereby obligating the employer to continue paying compensation benefits. Stewart v. Hospitals Affiliates International, Inc. of Baton Rouge, 404 So.2d 944, 945 (La.1981); Lott v. Reintjes Industrial Services of Louisiana, Inc., 540 So.2d 472, 475 (La. App. 1st Cir.1989), and cases cited therein. The key question is the relationship between the second injury and the initial injury. Where the subsequent off-the-job injury was foreseeable and came about as a result of the work injury having predisposed the victim to future injury, the subsequent injury is compensable under the worker's compensation law. Dickerson v. Kroger, 509 So.2d 813, 816 (La.App. 1st Cir.1987). The courts have held that an accident occurring away from work is compensable, where the work-related injury has not healed at the time of the accident, and as such, rendered the employee susceptible *1265 to further aggravating injuries. See Hughes v. General Motors Guide Lamp Division, 469 So.2d 369, 373 (La.App. 2d Cir.1985). The parties stipulated that the automobile accident occurred before Woodruff fully recovered from the injuries sustained at work. Additionally, the medical testimony established that Woodruff was more susceptible to injury during this healing period, and showed that the automobile collision aggravated the previous on-the-job injuries. The causal connection between the work injuries and the off-the-job injury is clearly established. We further find the aggravation to the work injuries sustained in the automobile accident was a natural and expected consequence stemming from the work injuries, and therefore, was foreseeable. Under the jurisprudence, Woodruff's employer was obligated to continue paying worker's compensation benefits following the June 26, 1986, automobile accident, and the trial court correctly found Hanover owed compensation benefits after this date.
B. Failure to give notice of the settlement.
The parties stipulated that Woodruff settled all claims arising out of the June 26, 1986, automobile collision with the tortfeasor and her insurer for $12,500.00, without the consent and approval of Hanover. The release was executed on December 30, 1986. Hanover contends that by failing to notify it of the settlement and obtain its consent, Woodruff violated La. R.S. 23:1102(B), and forfeited his right to future compensation beyond the date on which the settlement was executed. La. R.S. 23:1102(B) provides:
§ 1102. Employee or employer suits against third persons causing injury; notice of filing
* * * * * *
B. If a compromise with such third person is made by the employee or his dependent, the employer or insurer shall be liable for compensation in excess of the amount recovered against such third person only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise. Written approval of the compromise must be obtained from the employer if the employer is self-insured, either in whole or in part. If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer or insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney's fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise.
In ruling Woodruff did not forfeit his right to future compensation by failing to obtain Hanover's consent to the settlement, the trial court relied on Cedotal v. Wausau Insurance Company, 493 So.2d 263 (La. App. 3d Cir.1986). In that case, the court held that a compensation insurer was not entitled to notice of a medical malpractice claim filed by its employee, alleging the improper removal of a vaginal cyst, which was not, by any stretch of the imagination, connected with her employment. The court stressed that in order for the notice requirement to be triggered under La.R.S. 23:1102, the employer and compensation carrier must have a cause of action for reimbursement under La.R.S. 23:1101. Further, in order for the employer and compensation carrier to have a cause of action for indemnification under La.R.S. 23:1101, there must exist, the court stated, a corresponding right in the employee to receive compensation as a result of the injuries in question. The court found that *1266 since the allegations regarding the medical malpractice claim showed it was in no way connected with the employment, the employer and carrier were not liable to pay compensation benefits for the injuries sustained therein. Therefore, the court concluded, there was no basis for the employer and carrier to bring a suit against the alleged tortfeasor under La.R.S. 23:1101, and thus, the employer and carrier were not entitled to notice of the suit under La.R.S. 23:1102.
We agree with Hanover that this case is distinguishable from the present case, and was incorrectly relied on by the trial court as establishing a rule that notice need not be given whenever the event for which reimbursement is sought occurs outside the course and scope of employment. In any event, we reject the position that notice of a settlement need not be given solely because an accident for which compensation is sought occurs outside the course and scope of employment. As we have concluded, the June 26, 1986, accident was a compensable event, for worker's compensation purposes, and did not relieve Hanover of responsibility for paying compensation benefits to Woodruff. Therefore, the crucial issue in determining whether Woodruff was obligated under La.R.S. 23:1102 to give notice of his settlement with Allstate is whether Hanover would have had a cause of action for reimbursement of benefits paid from Allstate under La.R.S. 23:1101(B). Because of our resolution of this issue below, we conclude Hanover was entitled to notice of the settlement, and therefore hold that under the clear language of the statute, Woodruff forfeited his right to future compensation, that is, benefits payable after the date of the settlement. See Faught v. Ryder/P*I*E* Nationwide Inc., 543 So.2d 918 (La.App. 1st Cir.), writ denied, 545 So.2d 1040 (La.1989) (limiting the language "future compensation" to those benefits payable after the date of settlement).
We note that La.R.S. 23:1102(B) allows an employee who has not complied with the notice requirements to "buy back" his right to future compensation upon paying to the employer or compensation carrier an amount of money in conformance with the statute. Woodruff has not attempted, as of this date, to buy back his right to future compensation from Hanover.[1] Further, he has not attempted to exercise this option on appeal. Because Woodruff has not attempted to exercise his buy back right, we are powerless to order Hanover to continue paying compensation benefits at this time. Accordingly, we reverse the judgment of the lower court, and hold that Woodruff forfeited his right to compensation benefits by entering into the December 30, 1986, settlement with Allstate, without the consent of Hanover, as of the date of the settlement.[2]

*1267 COMPENSATION CARRIER'S RIGHT TO REIMBURSEMENT
Hanover challenges the lower court's ruling that it is not entitled to reimbursement for compensation benefits and medical payments made to and on behalf of Woodruff following the June 26, 1986, automobile accident from the third party tortfeasor's insurer, Allstate. Hanover contends that the accident caused by Allstate's insured extended its obligation to pay compensation benefits, and therefore, it is entitled to reimbursement from Allstate under La.R.S. 23:1101(B), which provides:
§ 1101. Employee and employer suits against third persons; effect on right to compensation
* * * * * *
B. Any person having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents. The recovery allowed herein shall be identical in percentage to the recovery of the employee or his dependents against the third person and, where the recovery of the employee is decreased as a result of comparative negligence, the recovery of the person who has paid compensation or has become obligated to pay compensation shall be reduced by the same percentage.
There appears to be confusion in the jurisprudence as to when a compensation carrier has a cause of action for reimbursement of compensation benefits paid when a work injury is aggravated in an off-the-job accident caused by a third party tortfeasor. At least one circuit has recently taken the position that an employer who is obligated to pay compensation has no right of reimbursement from a third party tortfeasor responsible for aggravating a work injury, when the accident for which reimbursement is sought occurs outside of the course and scope of employment. Cahill v. Schultz, 521 So.2d 442 (La.App. 4th Cir. 1988). Some cases have employed a foreseeability test, although there is inconsistency in the manner in which the test is applied. Compare Employers Mutual Liability Insurance Company of Wisconsin v. Dixon, 425 So.2d 885 (La.App. 4th Cir. 1983) (concluding that the event in which the aggravation occurs must be reasonably foreseeable) with Cahill, 521 So.2d at 444-446 (Ciaccio, J., dissenting) (stating that what must be foreseeable is the probability of aggravation, that is, the predisposition of the victim to future injury, not the method by which the aggravation is caused).
This court endorsed the foreseeability requirement in Dickerson v. Kroger, Inc., 509 So.2d at 816. In discussing whether a compensation carrier would have a cause of action under La.R.S. 23:1101 against a third party tortfeasor, this court focused on whether the carrier would be obligated to pay compensation to the employee for the aggravation. Thus, we stated, "[i]f, however, a subsequent injury away from work was foreseeable and came about as a result of the work-related injury having predisposed the victim to future injury, the subsequent injury is compensable under worker's compensation law." Dickerson, 509 So.2d at 816. We held in that case that the compensation carrier did not have a cause of action against the third party tortfeasor because the parties stipulated the subsequent injury was new, unforeseen and not caused by the work-related injury. Therefore, we concluded that the compensation carrier could not recover benefits paid in connection with an injury for which worker's compensation was not payable.
In ruling that Hanover did not have a cause of action against Allstate for reimbursement, the trial court correctly noted that the jurisprudence approaches the issue in terms of foreseeability. However, the trial court concluded that it was the event in which the aggravation occurred which had to be foreseeable, and denied recovery on the basis it was not proven at trial that Woodruff's involvement in the second accident occurred because of the injuries sustained in the work-related accidents.
We conclude that the trial court erred in its application of the foreseeability test to *1268 the facts of this case. We hold that when an off-the-job injury aggravates a work injury because that work injury predisposed the victim to future injury, the compensation carrier, which is obligated to pay compensation benefits because of that aggravation, is entitled to be reimbursed for those payments from the third party tortfeasor whose fault caused the aggravation.[3] We have previously concluded that the injury sustained in the off-the-job accident was compensable because it came about as a result of the work injuries having predisposed Woodruff to future injury, and was within the range of natural and expected consequences stemming from the original work injuries.
The medical testimony clearly established that Woodruff's present disability is attributable to the on-thejob accidents and the off-the-job accidents. According to Dr. Loupe, Woodruff would not have been able to return to work until one year after the second surgery necessitated by the work injury (April 1, 1987). Thus, but for the June 26, 1986, accident which aggravated Woodruff's work injuries and prolonged his recovery, Hanover's responsibility to Woodruff for compensation benefits would have ended, at the latest, on April 1, 1987. Because the aggravation sustained in the June 26, 1986, accident was compensable, Hanover's obligation to pay compensation would have been extended by the fault of a third person, and it would therefore have been entitled to reimbursement for those payments from Allstate under La.R.S. 23:1101(B). Hanover was entitled to notice of the settlement with Allstate, and by failing to notify Hanover of the settlement, Woodruff forfeited his right to future compensation.
Although Hanover has a cause of action against Allstate for reimbursement, we conclude under the unusual facts of this case, no amount of money is owed to Hanover by Allstate. Hanover cannot recover for payments made after December 30, 1986, the date of the unconsented-to settlement, as it was no longer legally obligated to continue paying compensation to Woodruff, and cannot be reimbursed for payments voluntarily made.[4]Pestco Exterminators, Inc. v. William T. Burton Industries, Inc., 304 So.2d 394 (La.App. 1st Cir. 1974). Further, we find no amount of money is owed from June 26, 1986 through December 30, 1986. As noted earlier, the medical testimony established Woodruff could not have returned to work until April 1, 1987, even if the June 26, 1986, accident had never occurred. Thus, Hanover would have been obligated to pay compensation benefits, at least through December 30, 1986, even if the accident for which reimbursement it sought had not occurred. Under these facts, Allstate should not be required to reimburse Hanover for payments made by it, during a time in which it was legally obligated to pay compensation. Accordingly, we overrule that portion of the case below holding Hanover did not have a cause of action for reimbursement of compensation benefits paid to Woodruff, but affirm the result reached in that case on *1269 the basis that no amount of money is owed to Hanover by Allstate.

PENALTIES AND ATTORNEY'S FEES
La.R.S. 23:1201 and La.R.S. 23:1201.2 authorize the imposition of penalties and attorney's fees against an employer or insurer who arbitrarily, capriciously or without probable cause denies compensation benefits. The claimant is not entitled to penalties and attorney's fees if there exists a rational basis for an employer and its insurer to decline to pay benefits. Connor v. Frees Construction Company, Inc., 525 So.2d 241 (La.App. 1st Cir.), writ not considered, 532 So.2d 111 (La.1988). The trial court awarded penalties and attorney's fees to Woodruff, finding that the termination of benefits by Hanover was arbitrary and capricious.
We reverse the awards. Hanover was justified in refusing to pay benefits following the December 20, 1986, settlement by Woodruff without its consent thereto. Because Woodruff did not attempt to buy back his right to future compensation prior to instituting this suit, Hanover acted reasonably in terminating benefits and cannot therefore be cast with penalties and attorney's fees.

CONCLUSION
Based on the foregoing, we reverse the judgment of the trial court in Robert Woodruff v. Bayou State Homes, Inc. and Hanover Insurance Company in its entirety. In that case, all costs, including costs of appeal, are assessed to Plaintiff. We affirm the result reached by the trial court in Hanover Insurance Company v. Allstate Insurance Company. Costs in that case are assessed to Hanover Insurance Company.
AFFIRMED IN PART.
REVERSED IN PART.
EDWARDS, J., concurs in both results. With respect to the 21st J.D.C. Judgment, according to medical testimony the period of work-related disability would have ended before the comp. benefits were actually terminated. With respect to the 19th J.D.C. Judgment, I agree that Hanover was not entitled to reimbursement from Allstate because the auto accident was not related to the on-the-job injury.
LANIER, J., concurs and assigns reasons.
LANIER, Judge, concurring.
I agree with the result reached by the majority. I do not agree with the rationale.
La.R.S. 23:1101(B) is clear and unambiguous in providing that "[A]ny person having paid or having become obligated to pay compensation under the provisions of this chapter may bring suit against such third person to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents." (Emphasis added). The judgments before us from the 19th Judicial District Court (JDC) and the 21st JDC are inconsistent because the 21st JDC holds that the employer and its insurer are "obligated to pay compensation" because the fault of a third party aggravated the employee's pre-existing, compensable injury but the 19th JDC holds that the employer and its insurer cannot recover from the third party any amount paid in compensation to the employee because the automobile accident was not work related.
When a disabling condition caused by a compensable accident is a cause of a second accident that aggravates the pre-existing injury, the second injury is also compensable. W. Malone and H. Johnson, 13 Louisiana Civil Law Treatise, Workers' Compensation Law and Practice, § 236 (2d ed.1980). Thus, if an employee suffers a second heart attack while at home recouperating from a first, job related heart attack or falls in a bathtub because of weakness from a prior work related injury, the second injury is compensable. Stewart v. Hospitals Affiliates International, Inc. of Baton Rouge, 394 So.2d 647 (La.App. 1st *1270 Cir.1980), affirmed, 404 So.2d 944 (La. 1981); Fields v. Sperry Rand Corporation, 343 So.2d 339 (La.App. 2d Cir.), writ denied, 345 So.2d 902 (La.1977). In such cases, the disability resulting from the first injury is causally related to the second accident and injury.
In the instant case, the employee's work related injury was aggravated by an automobile accident caused by the fault of a third party. This automobile accident was not work related. There is no evidence of record to show that the pre-existing, work related injury was a cause of the automobile accident. Nevertheless, the majority holds that such an injury is compensable. The majority's holding is in conflict with the following jurisprudence: Townsend v. Pittsburg Plate Glass Industries, Inc., 535 So.2d 407 (La.App. 3rd Cir.), writ denied, 536 So.2d 1200 (La.1988); Cahill v. Schultz, 521 So.2d 442 (La.App. 4th Cir. 1988); Employers Mutual Liability Insurance Company of Wisconsin v. Dixon, 425 So.2d 885 (La.App. 4th Cir.1983); Paulk v. General Accident Group, 373 So.2d 599 (La.App. 3rd Cir.1979); Allstate Insurance Company v. Theriot, 362 So.2d 1214 (La. App. 4th Cir.1978), reversed on other grounds, 376 So.2d 950 (La.1979). I would hold that the aggravation of the job related injury by the automobile accident was caused by the fault of the third person, and, since the job related injury was not a cause of the automobile accident, this aggravation is not compensable. I would affirm the judgment of the 19th JDC and reverse the judgment of the 21st JDC on that basis.
For the above reasons, I respectfully concur.
NOTES
[1] Although the legal ramifications of such a tender offer are not presented to us at this time, another court has recently been asked to decide the validity of an employee's tender offer to his employer, made three years after the date the employee entered into a settlement with a tortfeasor, without the consent of his employer. In Diebold v. Louisiana Coca Cola Bottling Co., LTD., 542 So.2d 52 (La.App. 4th Cir.1989), the employer refused tender of one-half of the settlement, arguing that its consent to the settlement was a condition precedent to the exercise of the employee's buy back rights, and alternatively, asserting the tender was untimely. The court rejected both arguments. It construed the language "notwithstanding the failure of the employer to approve such compromise" in the buy back provision to mean "in spite of", and found this language included the situation where an employee fails to give notice of a proposed compromise, and thus does not obtain the employer's approval. Further, the court noted that the statute is "conspicuous in its absence of a time limitation for the tender," thus rejecting the argument that the tender made three years after the date of the settlement was untimely. Therefore, the court concluded the employee was entitled to buy back his right to future compensation by paying one-half of the settlement to the employer.
[2] Woodruff answered the appeal, seeking to have the trial court's judgment against Hanover amended to reflect past due medical expenses at the time of the trial, in the amount of $500.00. All of the claimed medical expenses were incurred in 1988. We have concluded Woodruff forfeited his right to future compensation, including medical expenses, as of the date of the settlement. He cannot, therefore, recover these expenses, payable after the date of the settlement from Hanover.
[3] We point out that in the 1989 legislative session, the legislature amended La.R.S. 23:1101 to add the following provision:

§ 1101. Employee and employer suits against third persons; effect on right to compensation
C. For purposes of this Section, third person shall include any party who causes injury to an employee at the time of his employment or at any time thereafter provided the employer is obligated to pay benefits under this Chapter because the injury by the third party has aggravated the employment related injury. 1989 La. Acts No. 454, § 4.
The legislation provides that the effective date of the amendment is January 1, 1990. Apparently, the legislature inserted this provision to overrule the jurisprudence holding that a compensation carrier has no cause of action against a tortfeasor whenever the accident at issue does not literally occur in the course and scope of employment. We need not address at this time, however, the amendment's effect on the jurisprudential foreseeability requirement. This provision is clearly substantive in nature, and as such, is entitled to prospective application only. La.Civ.Code art. 6; See Young v. American Hoechst Corporation, 527 So.2d 1102 (La.App. 1st Cir.1988).
[4] The record establishes that the third surgery, necessitated by the June 26, 1986, accident, was not performed until June 16, 1987.