666 So.2d 376 (1995)
Sherion J. HOLLINGSWORTH
v.
EAST BATON ROUGE PARISH SCHOOL BOARD.
No. 94 CA 0518.
Court of Appeal of Louisiana, First Circuit.
December 15, 1995.
Writ Denied March 15, 1996.
*377 Richard M. Upton, Baton Rouge, for Plaintiff-Appellee.
Harold J. Adkins, Baton Rouge, for Defendant-Appellant.
Before SHORTESS, PARRO and KUHN, JJ.
SHORTESS, Judge.
Sherion J. Hollingsworth (plaintiff) is a special education teacher and computer specialist employed by the East Baton Rouge Parish School Board (defendant). Her job duties include lifting and transporting computer equipment for use by wheelchair-bound students. She also assists students in applying computers to wheelchairs, which requires lifting the student in and out of the chair and *378 maneuvering the equipment. On March 28, 1989, plaintiff injured her neck and back in a car accident while traveling between schools. Defendant stipulated this accident was work-related. She saw her family physician, who referred her to Dr. Thomas Flynn, a neurosurgeon. Flynn initially treated plaintiff conservatively with medication and physical therapy.
In July, after diagnostic testing, Flynn diagnosed plaintiff as suffering from a C4-5 disc rupture with significant cervical spondylosis below that level. Flynn recommended a two-level anterior cervical discectomy and fusion. Plaintiff saw Dr. Anthony S. Ioppolo, another neurosurgeon, for a second opinion, and he concurred with Flynn's recommendation. On August 9, 1989, plaintiff underwent surgery. Defendant stipulated the surgery was for the work-related accident.
On July 24, 1989, plaintiff applied for sabbatical leave for the first semester of the 1989-90 school year, which was subsequently approved. Plaintiff's sabbatical leave was rescinded November 14, 1989, at her request and per Flynn's approval in order for her to return to light-duty work. Since that time, plaintiff had not missed more than seven consecutive days of work; however, her treatment had been ongoing. The parties stipulated the only benefits received by plaintiff were medical benefits.
Plaintiff filed a "Disputed Claim for Compensation" (1008 Claim) with the Office of Workers' Compensation (OWC) on September 24, 1991, seeking additional benefits. Defendant denied responsibility for all benefits after a September 26, 1990, car accident and denied plaintiff was entitled to benefits for the period she was on sabbatical leave. After a trial, the hearing officer found defendant responsible for payment of all medical bills relating to treatment of the cervical area through September 7, 1990,[1] and all medical bills for treatment of the back from March 28, 1989, to the present. Plaintiff was awarded reimbursement of the difference between the sabbatical pay and the temporary total disability benefits owed from August 26, 1989, through November 13, 1989, in the amount of $4.91 per day.[2] Finally, plaintiff was awarded statutory penalties and attorney fees of $3,500.00.[3] Defendant appealed.
Defendant contends the September 26, 1990, accident was an intervening cause of plaintiff's back injury, and the award of medical benefits for her subsequent treatment should be reversed. Defendant further contends plaintiff's claim for indemnity benefits during the period she was on sabbatical has prescribed, and any award for benefits for that period of time should be reversed. Finally, defendant claims it was not arbitrary and capricious in handling plaintiff's claim, and the award for penalties and attorney fees should be reversed.

A. Was the September 26, 1990, accident an intervening, superseding cause?
The parties do not dispute the September 26, 1990, accident was not work-related.[4] Plaintiff contends this accident aggravated her already existing back and neck problems. Defendant claims her neck and back problems had resolved as of September 26, 1990, and, therefore, this accident was an intervening, superseding cause which bars payment for her subsequent treatment.
The law is well settled that when a work-related injury is subsequently exacerbated, the aggravation is regarded as a development of the initial accident, and not an intervening cause, even though it occurs away from work and even after the employment is terminated. Hanover Ins. Co. v. *379 Allstate Ins. Co., 554 So.2d 1261, 1264 (La. App. 1st Cir.1989). It is a compensable injury for workers' compensation purposes, and the employer is obligated to continue paying benefits. Stewart v. Hospitals Affiliates Int'l, 404 So.2d 944, 945 (La.1981). The key question is whether the off-the-job injury was foreseeable and came about as a result of the work injury having predisposed the victim to future injury.[5] If so, the subsequent injury is compensable. Hanover, 554 So.2d at 1264; Dickerson v. Kroger, 509 So.2d 813, 816 (La.App. 1st Cir.1987).
In written reasons, the hearing officer found the September 1990 accident created a new injury to the cervical area, "even though it involved the same part of the body as the work-related accident."[6] However, she found plaintiff underwent continuing treatment for pain related to her lumbar condition and was predisposed to re-injury of this area. She therefore found any injuries to the back resulting from the two later accidents were developments or aggravations of the original work-related accident.
The standard of review of findings of fact of a hearing officer in a workers' compensation case is manifest error. Doucet v. Baker Hughes Prod. Tools, 93-3087, p. 4 (La. 3/11/94), 635 So.2d 166, 168 n. 3; Bruno v. Harbert Int'l, 593 So.2d 357, 361 (La.1992). Therefore, these findings will be reversed only if they are clearly wrong.
The complete medical records of plaintiff's treatment for her back and neck injuries were introduced at the hearing. Those records revealed the following.
Plaintiff first visited Flynn one week after the accident, after being referred by her family doctor. She reported she was thrown forward forcefully in the accident and began experiencing a headache and back pain later in the day. That night she experienced tingling in her legs, and her headache worsened. Her family physician had prescribed various medication and ordered x-rays. Her chief complaints during her first examination with Flynn were low back pain, numbness and tingling in her legs, headaches, and numbness in her hands. Flynn began conservative treatment through medication, physical therapy, and restricting her activities.
On May 10, 1989, Flynn's notes reflect her complaint of "numbness in the right forearm and hand but no pain." Her visit three weeks later on May 31 reflects "tingling in her right arm and an occasional headache." Plaintiff also continued previously-ordered cervical traction. On June 27, 1989, Flynn reported "patient's radiating pain continues especially in her right upper extremity and she is dropping things on occasion." At this time, he ordered a cervical CAT scan. On July 14, 1989, Flynn reviewed plaintiff's x-rays and discovered a "startlingly large C4, C5 disc rupture" with "significant cervical spondylosis below that." Flynn recommended plaintiff undergo a two-level anterior cervical fusion and discectomy. Ioppolo agreed with Flynn's recommendation. The surgery was performed on August 9, 1989.
From the end of August through November 1989 Flynn saw plaintiff every three to four weeks. His notes reflect good progress, and he released her to return to light-duty work on November 8, 1989. She saw Flynn on January 9, 1990, and reported occasional tingling in her lower extremities and continuing problems in her low back.
On February 2, 1990, Flynn noted her cervical symptoms had resolved completely, but she complained "bitterly of low back and right hip pain." He specifically noted "[s]he did describe low back pain when she was originally seen for her job related injury and presumably this is a continuation of this problem." Her visit on April 20, 1990, reflected continuing symptoms in her low back.
Flynn examined plaintiff on June 22, 1990, following the second accident. She complained of recurrent low back and right leg pain. His exam revealed muscle spasm on the right side. He started another round of physical therapy and recommended restrictions *380 "on an [ongoing] basis because of her lumbar spondylosis." His examinations in August and early September 1990 indicate she was doing well but continued to have "recurrent low back pain" and "stiffness and pain about the right hip."
Flynn's records next reflect a telephone call on September 27, 1990, the day after her third accident. He reported her CAT scan results "showed good fusions" at the levels of her previous surgery. He reported she was "doing okay right now" and stated she would wear her neck collar if she had any difficulty. Flynn recommended she use a heating pad and "take it easy for the next several days." Her complaints of low back and left extremity pain continued in October and December 1990. She also continued to complain of headaches. Plaintiff canceled two appointments in February because of illness and travel. She saw Flynn on April 22, 1991, "with complaints of neck and upper extremity pain, left elbow discomfort, back and lower extremity discomfort." He began giving plaintiff Toradol injections at this time, which continued for three weeks. On her May 9, 1991, visit plaintiff reported the Toradol injections had helped considerably, but still reported "complaints of numbness nocturnally in both hands and all of the fingers of both hands very suggestive of carpal tunnel syndrome." Her June 4, 1991, visit reflected "continued complaints of burning and pain in her hands after sleep and recurrent headache." Flynn continued to give plaintiff Toradol injections.
Her visits in June, July, and August 1991 reflect continued Toradol injections for relief of pain. On September 11, 1991, she reported her lower back was improving, but she was experiencing "a little bit of neck and shoulder pain." Toradol injections were continued through October 1991, at which time Flynn's records end.
Plaintiff's treatment by Flynn reflects initial complaints of neck and back pain, headaches, pain in her hip, and tingling and numbness in her lower and upper extremities. Although the frequency and intensity of these complaints varied, the records do not show her back problems ever completely resolved. While plaintiff's complaints were not the same on each visit, they were consistently the same as the complaints she had been experiencing since the March 1989 accident. The hearing officer was not clearly wrong in finding plaintiff was predisposed to re-injury of her lumbar region. Plaintiff was correctly awarded all medical benefits for treatment of her back from March 28, 1989, to the present.

B. Plaintiff's claim for indemnity for the period of sabbatical
Defendant contends plaintiff's claim for indemnity for the period she was on sabbatical should be reversed because it is prescribed on its face. This contention is based on the 1008 Claim plaintiff filed with the OWC on September 24, 1991, more than two years after the March 1989 accident.
Louisiana Revised Statute 23:1209(A) states an employee has one year from the time of the accident or the time the injury develops to file a workers' compensation claim for an injury. In all cases, the cause of action is forever barred unless proceedings have begun within two years from the date of the accident.
After the judgment awarding benefits was issued, defendant appealed, raising the issue of prescription for the first time. This court remanded for a hearing on that issue.
On remand, the hearing officer found a prior claim had been filed by plaintiff on or about November 9, 1989, and a recommendation had been issued by the OWC on December 13, 1989. The recommendation was received by all parties and was not rejected; therefore, the parties were conclusively presumed to have accepted the recommendation. The hearing officer found this filing interrupted prescription.
The record contains claims which plaintiff testified were filed in July 1989, then re-filed in November 1989. An OWC letter acknowledges receipt of a 1008 Claim postmarked November 9, 1989, and received by the OWC on November 14, 1989, "stating that a bona fide dispute occurred as a result of an injury sustained by Sherion Hollingsworth on March 28, 1989 while employed by East Baton Rouge Parish Schools." The letter further *381 states the March accident was work related and recommends payment of temporary total benefits from August 24, 1989, through November 8, 1989, less any sabbatical leave paid in lieu of worker's compensation."
A letter from the OWC dated February 12, 1990, certifies a recommendation was issued and confirms plaintiff and Alexis Risk Management received it December 22, 1989, and defendant received it January 3, 1990. This recommendation was not appealed by either party.
The trial court was not manifestly erroneous in finding prescription was interrupted by the November 1989 filing of a 1008 Claim.[7]
The stipulations and testimony at the hearing show plaintiff received sabbatical pay under Revised Statute 17:1184 from August 26, 1989, through November 14, 1989. The testimony was clear and uncontroverted this time was used to recover from a surgery necessitated by a work-related injury. It is also undisputed plaintiff received no workers' compensation benefits during this time.
Defendant contends plaintiff voluntarily chose to use sabbatical leave rather than seeking workers' compensation benefits. Under these circumstances, defendant claims the case of Cormier v. Lafayette Parish School Board, 508 So.2d 207 (La.App. 3d Cir.1987), requires this court to reverse the hearing officer's award of the difference between plaintiff's sabbatical pay and the temporary total disability benefits to which the hearing officer determined plaintiff was entitled.
The hearing officer found plaintiff did not voluntarily request sabbatical leave in lieu of compensation benefits. This finding is supported by the record. Plaintiff testified she called defendant's finance office and spoke to Debbie Allen. She told Allen she had a work-related injury requiring surgery, and Allen informed her she would have to take sabbatical leave. Allen, according to plaintiff, told plaintiff she would receive sabbatical pay, which was 75% of her regular pay, in addition to supplemental benefits from workers' compensation, and the total would equal her full salary. She was instructed to call the personnel office to obtain the proper paper work. When she called the personnel office, she spoke to Alice Sims. Plaintiff told Sims she needed surgery and needed instructions on filing for sabbatical leave.
Sims confirmed she spoke to plaintiff about leave for the surgery. She testified plaintiff did not tell her the surgery was for a work-related injury, and, if plaintiff had, she would have referred her to the finance office, which handles workers' compensation matters. Sims determined plaintiff would not have enough sick leave time for her recuperation, even if she was granted extended sick leave. She stated plaintiff's other paid option was to take sabbatical leave. Under the circumstances as she knew them, she believed plaintiff's only other option was to take unpaid leave, which would interrupt plaintiff's continuous service and have other negative effects.[8] Sims confirmed she did not discuss workers' compensation benefits at all with plaintiff. Sims did not know Debbie Allen in the finance office, but she did not dispute her existence. Defendant produced no evidence to show it did not employ anyone by this name.
The hearing officer noted in her written reasons Sims did not contradict any of plaintiff's testimony and further found plaintiff's testimony credible regarding her conversation with Allen. Specifically, the hearing officer found plaintiff misunderstood her entitlements regarding workers' compensation and sabbatical. We agree with these factual conclusions, which cannot be considered manifestly erroneous.
*382 The Cormier case is inapposite to the facts and circumstances herein. In Cormier, the claimant knew he was entitled to workers' compensation disability benefits. Instead of choosing workers' compensation, which in that case would have been less money, the plaintiff chose to take his sabbatical leave. Here, plaintiff never understood she was entitled to temporary total disability payments. The OWC recommendation letter indicates the OWC calculated her temporary total disability benefits at $267.00 per week. She did not select sabbatical pay "in lieu of disability pay. She took sabbatical leave because she believed she had no other option. In doing so, she lost the sabbatical leave which had taken six years to accumulate.
Based on the plaintiff's choice not to take workers' compensation, the Cormier court declined to award indemnity for those benefits because it would be a windfall to the plaintiff. Because plaintiff herein used her sabbatical without the knowledge she legally was not required to do so, the windfall in this case is to defendant.
Sabbatical leave is an earned employee benefit.[9] A teacher is entitled to apply for two semesters sabbatical leave for every twelve consecutive semesters worked, or one semester sabbatical for every six consecutive semesters worked. La.R.S. 17:1171.
The hearing officer acknowledges plaintiff was entitled to temporary total disability benefits, but awarded only the difference between sabbatical pay and those benefits. Requiring her to use sabbatical leave for recuperation from a work-related injury violates Revised Statutes 23:1206[10] and 23:1163.[11] This result is insufficient compensation to the worker, as well as a disincentive to the employer to comply with the law. See Chevalier v. L.H. Bossier, 94-1537 (La.App. 3d Cir. 7/12/95), 663 So.2d 70. It is fundamentally inequitable and contrary to the law and policy of the workers' compensation scheme. Although the hearing officer did not have jurisdiction to give back the time used, she had jurisdiction to award full temporary total disability benefits for this period. Accordingly, we amend the hearing officer's award from $4.91 per day to the full amount of temporary total disability benefits calculated by the OWC in its December 1989 recommendation, which was $267.00 per week, with no reduction for sabbatical leave pay.[12]

C. Penalties and Attorney Fees
Defendant contends the record does not support the award of penalties and attorney fees. The hearing officer's factual determinations regarding whether an employer is arbitrary and capricious in refusing to pay workers' compensation, and thus liable for attorney fees and penalties, is entitled to great weight by the reviewing court. Talley v. Enserch Corp., 508 So.2d 197, 206 (La. App. 3d Cir.), writs denied, 513 So.2d 289, 290 (La.1987).
The record shows plaintiff never understood her rights because of defendant's representations. Furthermore, defendant always was in a superior position to inform plaintiff of her rights. No one ever attempted to do so. Plaintiff testified Flynn refused to see her after the minor accident in June 1990 because of a large unpaid balance from the 1989 surgery. She went back to Flynn after the September 1990 accident, but her personal insurer paid the bills.
Jancy Templet, an adjuster for F.A. Richard & Associates, was the fourth adjuster with that company to handle the case. She *383 indicated the file had been taken over from Alexis Risk Management in October 1990. She confirmed Flynn's bill for $4,765.00 related to the August 1989 surgery was paid in March 1992. She did not know why the bill was not previously paid, nor did the file or she indicate any other reasons why this and other bills were outstanding.
The OWC letter from December 1989 confirms the initial accident was work-related and medical benefits stemming from it should be paid. A long delay in paying claims warrants imposition of penalties and attorney fees, absent any explanation or evidence as to why benefits were not promptly paid. Levatino v. Domengeaux & Wright, P.L.C., 593 So.2d 721, 725 (La.App. 1st Cir. 1991), writ denied, 596 So.2d 196 (La.1992). We also agree with the hearing officer's finding that defendant selected portions of plaintiff's medical records and did not read them as a whole. The hearing officer was not manifestly erroneous in awarding penalties and attorney fees.
For the foregoing reasons, the portion of the judgment awarding plaintiff medical benefits for treatment of her back is affirmed. The judgment is amended to increase the benefits awarded from $4.91 per day to $267.00 per week for the period of August 26, 1989, through November 13, 1989, without any reduction for sabbatical leave pay. The award of statutory penalties and attorney fees is affirmed. Costs of this appeal, in the sum of $1,086.25, are assessed to defendant, the East Baton Rouge Parish School Board.
AMENDED IN PART, AND AS AMENDED, AFFIRMED.
PARRO, J., dissents from that portion of the majority's opinion that upholds the hearing officer's judgment denying the defendant's exception raising the objection of prescription.
NOTES
[1] This portion of the judgment apparently contains a typographical error. Defendant does not dispute the proper date should be September 26, 1990.
[2] These are the stipulated dates plaintiff was on sabbatical leave recovering from surgery.
[3] The judgment denied plaintiff's claims for reimbursement of sabbatical leave and attorney fees for failure to reimburse the leave, reserving plaintiff's right to file these claims in state district court.
[4] Plaintiff was in a second car accident in June 1990, which the parties stipulated was non-work-related. Defendant has never claimed this accident was an intervening cause, and it is not at issue in this case. Plaintiff did not need immediate medical attention and continued her ongoing treatment from the initial accident.
[5] Whether it was foreseeable plaintiff might be involved in a subsequent car accident was not an issue at trial and is not an issue on appeal.
[6] Plaintiff did not appeal this factual finding; therefore, we do not address whether the hearing officer was correct.
[7] Defendant conceded at the hearing if plaintiff could document she had filed 1008 Claims in July and in November, prescription was interrupted. Copies of the claims and the subsequent OWC correspondence are in the record from the hearing. Why is defendant now before this court arguing plaintiff's claim for indemnity had prescribed in light of defense counsel's own statements at the hearing?
[8] The hearing officer's written reasons state requesting leave without pay would not interrupt service. However, Sims' testimony specifically stated such leave would interrupt service.
[9] Revised Statutes 17:1170-1217 provide a comprehensive scheme for leaves of absence for public school teachers.
[10] This statute allows an employer to credit only voluntary payments or unearned wages or compensation "which were not due and payable when made." See Talley v. Enserch Corp., 508 So.2d 197, 205 (La.App. 3d Cir.), writs denied, 513 So.2d 289, 290 (La.1987).
[11] This statute prohibits the employer from directly or indirectly requiring an employee to pay the cost of workers' compensation benefits. Woolsey v. Cotton Bros. Bakery Co., 535 So.2d 1119, 1127 (La.App.2d Cir.1988), writ denied, 537 So.2d 1168 (La.1989).
[12] Revised Statute 23:1163 also would prohibit any deduction from plaintiff's benefits for the cost of hiring a substitute teacher. This would be contrary to the workers' compensation scheme.