WEIMER, Justice.
 
 [1]
 

 LWe granted certiorari in this matter primarily to examine whether an employer is liable for medical treatment when an employee’s on-the-job injury is aggravated in a severe automobile accident that occurred off the job two years later. In urging such liability, claimant has relied on this court’s holding in
 
 Kelly v. City of New Orleans,
 
 414 So.2d 770 (La.1982) and LSA-R.S. 23:1101(C). Following a consideration of the specific facts of this case and the applicable law, we find claimant’s reliance is misplaced, and we reverse the portion of the judgment casting the defendant employer responsible for the injuries suffered in the off-the-job accident.
 

 In argument to this court, the defendant employer has also urged the lower courts
 
 *278
 
 erred in determining claimant is entitled to temporary total disability benefits (TTD) for the on-the-job injury. Finding there was manifest error in that decision, we reverse that award.
 

 | sFACTUAL BACKGROUND
 

 The facts and early procedural history of this case are recounted in
 
 Buxton v. Iowa Police Department,
 
 06-1389 (La.App. 3 Cir. 3/7/07), 952 So.2d 922,
 
 writ denied,
 
 07-0719 (La.6/1/07), 957 So.2d 176
 
 (Buxton I).
 
 Marvin W. Buxton, a corporal with the Iowa Police Department (Iowa), was involved in a work-related accident on May 7, 2004, when his police unit was struck by a motorcycle as he attempted to block Thompson Street in Iowa, Louisiana. The Lake Charles Police Department had requested assistance from the Iowa police in stopping the driver of the motorcycle, who had refused to pull over for speeding. Buxton brought his unit to a standstill, blocking both lanes of travel on Thompson Street. However, while attempting to pass to the left of Buxton, the motorcycle rider hit the front passenger side of the police unit with his bike and was thrown into a ditch. The record contains pictures of the police unit which depict minimal damage consisting primarily of a broken plastic light cover on the right front bumper. Nevertheless, according to
 
 Buxton I,
 
 Buxton claimed that he hit his head on the door of his unit as he attempted to exit it immediately prior to the impact.
 

 This incident occurred at approximately 2:00 a.m., and Buxton continued working until his shift ended at 6:00 a.m. At that time Police Chief Charles Ipes ordered Buxton to go to the pathology laboratory in Lake Charles to take a drug screen test. However, shortly after arriving there, Buxton and his wife left because he was in pain and felt that it would take too long to undergo the test.
 

 The couple returned to Iowa, where Buxton was seen by his family doctor, Dr. Young Bin Kang, who diagnosed him as suffering from a left hand contusion, headache, and neck pain. Although the court of appeal noted that Buxton had not worked since the May 7, 2004 accident, the record shows he merely took ten days of Issick leave after the accident and remained on the payroll until he resigned his position on the police force effective June 9, 2004.
 

 Buxton had been custodian of the evidence room at the police station. When he went on sick leave after the accident, Chief Ipes assigned that job to Officer Jimmy Horner, who conducted an inventory. In doing so, he discovered discrepancies in the evidence located there and an amount of money missing. Chief Ipes requested that the Calcasieu Parish Sheriffs Office perform an investigation into the matter. Pursuant to a warrant, a search was made of Buxton’s home, where numerous evidence envelopes were found, along with marijuana, other drugs, and drug paraphernalia.
 
 [2]
 

 On the advice of his counsel, Buxton resigned from the Iowa Police Department effective June 9, 2004. Thereafter, charges were filed against him for malfeasance in office, obstruction of justice, and possession of marijuana. Buxton later pled no contest to the charge of malfeasance in office and was sentenced to two years of supervised probation.
 

 On June 29, 2004, Buxton filed a claim for unemployment compensation. He checked “Yes” to the question asking if he was able to work, searching for work, and
 
 *279
 
 available to accept employment. Eventually, his application for unemployment compensation was denied. In an opinion dated August 12, 2004, the Administrative Law Judge stated the reasons for deciding Bux-ton was disqualified from receiving benefits were: he had resigned his employment following his arrest; the evidence seized in the investigation showed misconduct connected with his employment; and he refused a drug test ordered by his superior.
 

 |40n July 15, 2004, Buxton filed a disputed claim seeking workers’ compensation benefits based on Iowa’s failure to pay him wage benefits or authorize medical treatment. He further stated that he had never refused to take a drug screen after the accident. Iowa answered, arguing the affirmative defense of intoxication based on Buxton’s failure to undergo the drug screen.
 
 [3]
 
 Following a hearing on a rule, Iowa was ordered to authorize Buxton’s evaluation by Dr. Clark Gunderson.
 

 Trial on the merits was not held until June 15, 2006, two years after the on-the-job accident and one year after the last medical treatment of Buxton’s alleged injuries. Both Buxton and his wife testified. Various documents, including medical records and depositions of other witnesses, were admitted into evidence.
 

 The Office of Workers’ Compensation hearing officer found that Buxton refused to undergo the drug screen and that Iowa was entitled to the presumption of intoxication as provided by LSA-R.S. 23:1081(7)(b). The hearing officer further held that Buxton failed to rebut the presumption and dismissed his claims against Iowa with prejudice.
 

 Buxton appealed. The threshold issue on appeal was whether the dismissal was appropriate. Additionally, Buxton urged that the hearing officer erred in finding that no work-related accident occurred, in denying his disability and entitlement to benefits, and in denying his claim for penalties and attorney’s fees.
 

 IsThe court of appeal found no error in the hearing officer’s finding that Buxton refused to submit to the drug test, thus entitling Iowa to rely on the presumption that the accident occurred as a result of his intoxication. However, the court of appeal concluded Buxton had adequately refuted the presumption of intoxication. Thus, the court of appeal reversed the judgment in favor of the employer. The matter was remanded because the record was insufficient for the appellate court to determine the other issues raised by Bux-ton and noted in his assignments of error.
 
 Buxton I.
 

 Medical evidence:
 

 At the first trial in 2006, defendant Iowa introduced the deposition testimony of Dr. Young Bin Kang, who outlined the history of his treatment of Buxton. In February of 2002, he was first consulted by Buxton,
 
 *280
 
 who was working as a “sales supervisor.” Buxton complained of muscle spasms, but did not specify an area of the body where he felt them; he also complained of discomfort at the site of a surgical wound that was the result of recent hernia repair. Dr. Kang diagnosed Buxton as suffering from high blood pressure and being overweight. A month later Buxton returned and repeated his complaint of muscle spasm, adding a complaint of cramps in the ribs. Dr. Kang diagnosed bronchitis and prescribed antibiotics. He also prescribed Vicodin and Soma for muscle spasm and muscle ache.
 

 Dr. Kang, who was also the police department doctor, next saw Buxton in December of 2002, when he performed a pre-employment physical examination of the applicant for a position on the police force. The doctor’s conclusion was that Buxton was in good health, but he recommended lower calorie intake and more activity to achieve weight loss.
 

 Between the pre-employment physical and the motorcycle/police unit collision, Buxton consulted Dr. Kang twice. On April 9, 2003, he had complaints of back pain, | fidue to a pulled muscle. He said he hit his back against a table five days earlier, and also had an on-the-job episode of pulling a dead body from a wrecked 18-wheeler. Dr. Kang concluded Buxton was suffering from “simply back pain” and nervousness. He prescribed Lortab for pain and Soma for muscle spasm. A month later, after having been in a fight, Buxton’s chief complaint was lower back pain, as well as injuries to his right knee, right hand, and elbow. Upon examination, Dr. Kang’s only positive finding was a small bruise on the lower back side.
 

 Buxton did not visit Dr. Kang again until May 7, 2004, less than 24 hours after the motorcycle/police unit collision. Bux-ton reported injury to the left hand and the left side of the face, plus neck pain and back pain. Upon examination, there were no lacerations or bruises. Although his neck was tender, all other body parts and extremities, including the back, were normal. Dr. Kang’s diagnosis was headache after the accident and neck pain between the shoulders. The doctor gave instructions related to a possible head injury and discharged the patient.
 

 The next visit to Dr. Kang was on May 11, 2004, when Buxton’s chief complaint was headache, back pain, and neck pain; he also reported vomiting four times during the last four days. The prescription for Soma and Lortab was continued, and he was told he could also take Tylenol.
 

 A week later, Buxton returned, complaining of a “knot” on the back of the neck, which Dr. Kang described as being “subjective” with no objective finding of same. Results of all of the previous post-accident tests performed on Buxton were normal. Because of Buxton’s complaints, the doctor’s recommendation was rest and the use of heating pads and/or braces for the lower back and a collar for the cervical area, if needed. Medication remained the same, with the addition of an anti-inflammatory, Motrin.
 

 17The June 1, 2004 visit was a repetition of the complaints and a continuation of the medication. The result of the doctor’s physical examination of the patient was “normal.” On June 7, 2004, Buxton and his wife Margaret reported to Dr. Kang. Mrs. Buxton stated he needed an MRI for the back, in her opinion. Dr. Kang disagreed that an MRI was called for at that time and he asked that they wait for that.
 

 A month after that visit, on July 8, 2004, the patient wanted to go back to work, but the doctor did not approve of him doing heavy duty yet. Buxton’s physical examination was the same. Although there was
 
 *281
 
 tenderness in the lower back, his deep tendon reflexes, sensory function, and motor function in all the lower extremities were normal. The patient did have hypertension.
 

 Buxton’s next visit with Dr. Kang was on August 16, 2004, four days after he was denied unemployment compensation. Buxton reported to the doctor that he thought his blood pressure was up because of the back pain. The doctor’s examination that day was that the deep tendon reflex was slightly sluggish and the motor function was a little diminished. Dr. Kang decided to order the MRI for the back to rule out a ruptured disk or some other severe injury. Dr. Kang also prescribed a muscle relaxer and Lortab for the pain.
 

 In November of 2004, an x-ray of the lower spine was negative. The MRI that Dr. Kang ordered was performed in January of 2005. Although Dr. Kang had told the patient to come back after the test to discuss the results, the August 16, 2004 visit was the last time Dr. Kang saw Bux-ton.
 

 Nevertheless, the record contains a handwritten report by Dr. Kang dated September 1, 2004, that states the doctor’s opinion that the patient “needs time to recover from the accident.”
 

 Is At the first trial, Buxton introduced the medical records of Dr. Clark A. Gunder-son, which included a report of an office visit on April 26, 2005. The report is entitled “TO WHOM IT MAY CONCERN” and contains a checkmark at “IS
 
 NOT
 
 ABLE TO RETURN TO WORK” and a handwritten remark of “no duty” which are relative to work status.
 

 At the second trial, on May 5, 2008, the parties entered the deposition of Dr. Clark A. Gunderson as a joint exhibit. Buxton first consulted Dr. Gunderson on April 26, 2005, which was the first time he consulted an orthopedic doctor after the 2004 accident. He reported to the doctor that he had experienced immediate nausea and vomiting at the time of the motorcycle/police unit collision and a few hours later developed back and neck pain. The doctor noted that the patient presented with a “bent forward posture.” He had diminished sensation in the S-l dermatome on the right and the right Achilles reflex was absent. He reported tenderness about L-8 to L-5 on both sides, as well as on both sacroiliac joints; straight leg raising caused back pain at 40 degrees on both sides.
 

 Buxton returned to Dr. Gunderson on May 26, 2005, with the films and report of the January 11, 2005 MRI. Dr. Gunderson testified the MRI showed no disk herniation of the lumber spine; he stated the discs were “normal.” The narrowing of the spinal column was a congenital condition, not related to the accident. Nevertheless, Buxton’s symptoms were right leg numbness, bilateral hip numbness, and right greater than left low back pain. Dr. Gunderson recommended a myelogram and further tests, and in his record of the May 2005 visit, he recorded the patient’s current work status as “no duty.”
 

 Uln his deposition, Dr. Gunderson summarized his diagnosis as diminished sensation in the S-l dermatone on the right; the right Achilles reflex was absent; and tenderness about the L3-L5 level on both sides.
 

 Dr. Gunderson did not see Buxton again until September 27, 2007, seven months after Buxton incurred injuries when the automobile he was driving collided with a cow on February 25, 2007. On that date, he was immediately transported to Lake Charles Memorial Hospital where he was treated at the emergency room for bilateral open mandible fractures, a fractured nose, chest wall contusions, cervical inju-
 
 *282
 
 ríes and other injuries to his face and head. After he was stabilized, he was transferred to the LSU Medical Center in Shreveport, where he underwent surgery to reduce the open bilateral mandible fractures. The record contains pictures of the automobile that was damaged by the collision with the cow; the vehicle is crushed from the cow’s hitting the windshield and causing a cave-in over the driver’s seat.
 

 When Buxton consulted Dr. Gunderson in September of 2007, his complaints, according to the doctor, were constant “neck pain radiating down to between his shoulder blades” and “lower back pain going into both hips and down both legs, all the way to his feet.” Although Dr. Gunderson agreed that his symptoms were significantly different in 2007 than they were in 2005, his notation was that Buxton related all of his complaints to the original injury,
 
 i.e.,
 
 the motorcycle/police unit accident; Bux-ton admitted he did hit a cow, but said all pain pre-existed the cow accident.
 

 Dr. Gunderson reviewed MRIs taken on July 26, 2007. According to the report there were multiple levels of disk bulging at the left lower three levels in the lumbar spine. However, the doctor stated one cannot compare MRI reports of two different radiologists. When questioned by counsel for claimant about whether the cow accident aggravated Buxton’s previous back injury, Dr. Gunderson stated the cow 110accident “probably made it worse.” The doctor was of the opinion that Buxton needed a myelogram and that he is “probably” going to need a posterior laminecto-ry and fusion with pedicle screws. He also thought the cow accident made the need for surgery of both the neck and lower back more likely than before the cow accident.
 

 It is undisputed that following the cow accident, in November of 2007, Dr. R. Dale Bernauer of the Bernauer Clinic in Lake Charles was of the opinion the Buxton needed surgery to his neck and his back, especially his lower back. However, Dr. Bernauer offered no opinion regarding causation.
 

 At the second trial in 2008, the parties introduced the entire record from the first trial and joint exhibits, including the Gun-derson deposition. They also entered a stipulation that: Buxton’s weekly wage was $490.86; Buxton resigned his employment with the police department on June 9, 2004; and defendant is entitled to a credit of $6,666 for Buxton’s settlement with the motorcycle rider’s insurer. It was also undisputed that Iowa paid all of the expenses Buxton incurred with Dr. Kang and Dr. Gunderson.
 

 After taking the matter under advisement, the hearing officer rendered judgment in favor of Buxton, awarding temporary and total disability benefits in the amount of $327.24 per week, beginning September 1, 2004, the date on which Dr. Kang had noted Buxton needed time to recover. The judgment also held Iowa liable for the “reasonable and necessary medical treatment for the injuries to his lumbar spine by Dr. Gunderson.” Iowa’s credit of $6,666 was recognized.
 

 Iowa perfected a suspensive appeal. The appellate court affirmed the decision of the hearing officer.
 
 Buxton v. Iowa Police Department,
 
 08-0980 (La.App. 3 Cir. 2/4/09), 3 So.3d 641
 
 (Buxton II).
 
 Upon application by Iowa, this court granted a writ.
 
 Buxton v. Iowa Police Department,
 
 09-0520 (La.4/24/09), 7 So.3d 1201.
 

 DISCUSSION
 

 As we previously noted, Buxton has relied on this court’s holding in
 
 Kelly v. City of New Orleans, supra,
 
 and on the provisions of LSA-R.S. 23:1101(C). Iowa
 
 *283
 
 has challenged that reliance by urging that the second accident was an independent, superceding cause of any disability that claimant has at the present time. Although these issues are fact intensive, we must examine the statutory provisions, as well as the principles enunciated in the jurisprudence, to determine their application to the facts evidenced by the record. Our analysis is complicated by the fact that aggravation of a previous on-the-job injury was not an issue in the first trial on the merits because the second accident did not occur until approximately eight months after the hearing officer dismissed Bux-ton’s claim on the grounds of waiver for having refused a drug test following the on-the-job accident. It was not until the second trial, after remand, and the subsequent second appeal,
 
 Buxton II,
 
 that the issue of the employer’s responsibility for a subsequent aggravation of a previous on-the-job injury was addressed. Even then, the hearing officer did not specifically mention the issue or even acknowledge the employer’s defense of intervening cause.
 

 An employee is entitled to compensation benefits if he or she suffers a personal injury by an accident arising out of and in the course of employment. LSA-R.S. 23:1031. This court has stated that under this statute a successful claimant’s proof must show personal injury which is the result of an accident, which accident arises out of and in the course of employment.
 
 Guillory v. United States Fidelity & Guaranty Insurance Company,
 
 420 So.2d 119, 122 (La.1982). The chain of causation required by the statutory scheme as adopted by the legislature in LSA-R.S. |1223:1031 is that the employment causes the accident, the accident causes injury, and the injury causes disability.
 
 Id.
 
 The employee has the burden of proving, by a preponderance of the evidence, that the resulting disability is related to an on-the-job injury.
 
 See Chapman v. Belden Corporation,
 
 428 So.2d 396, 400 (La.1983). (Medical testimony, along with claimant’s testimony, suggested only a possibility of a causal relation between his employment and his disability.);
 
 see also, Anthony v. BE & K Construction,
 
 32,729 (La.App. 2 Cir. 5/10/00), 760 So.2d 608,
 
 writ denied,
 
 2000-1673 (La.9/15/00), 768 So.2d 1280. In
 
 Prim v. City of Shreveport,
 
 297 So.2d 421, 422 (La.1974), this court stated:
 

 Although procedural rules are construed liberally in favor of workmen’s compensation claimants, the burden of proof, by a preponderance of the evidence, is not relaxed. Thus, the testi-. mony as a whole must show that more probably than not an employment accident occurred and that it had a causal relation to the disability. If the testimony leaves the probabilities equally balanced, the plaintiff has failed to carry the burden of persuasion. Likewise, the plaintiff’s case must fail if the evidence shows only a possibility of a causative accident or leaves it to speculation or conjecture.
 

 Although it was conceded by the parties that Buxton suffered an accident on May 7, 2004, which accident arose out of and in the course of his employment with the Iowa Police Department, the above stated rules apply equally to the facts of this matter, which involve an off-the-job aggravation of an on-the-job injury. As the court of appeal noted in
 
 Buxton II,
 
 Iowa’s appeal (and its subsequent application for writ to this court), while couched in terms of three assignments of error, essentially focuses on its contention that the injuries following the incident in which Buxton struck the cow was not causally related to the motorcycle collision.
 

 Under certain circumstances an aggravation of an injury initially sustained
 
 *284
 
 at work is regarded as compensable, obligating the employer to continue paying compensation benefits, even though the aggravation develops away from the premises |iaand when the claimant is no longer employed by the employer.
 
 Stewart v. Hospitals Affiliates International, Inc. of Baton Rouge,
 
 404 So.2d 944, 945 (La.1981) (A fall at home was causally connected to an at-work injury that weakened claimant’s leg.) The aggravation is regarded as a development of the initial accident even though the aggravation develops away from the employer’s premises after employment has terminated.
 
 Id.
 
 The Louisiana jurisprudence is consistent with “[mjost jurisdictions” wherein the general rule is that “natural consequences that flow from the primary injury are compensable
 
 absent an independent intervening cause.”
 
 (Emphasis supplied.) Karenina M. Darmer,
 
 Worker’s Compensation for Off-Site Aggravation of Employment-Related Injuries-Blackwell v. Bostitch, 591 A.2d 381 (R.I.1991),
 
 26 Suffolk U.L.Rev. 529, 532-533 n. 18,
 
 citing Hanover Insurance Company v. Allstate Insurance Company,
 
 554 So.2d 1261, 1264-1265 (La.App. 1 Cir.1989) (Parties stipulated that the off-the-job automobile accident occurred before claimant had fully recovered from surgery to his knee necessitated by a work injury; the surgeon testified the knee was still highly susceptible to injury.) Commentary has noted that “[i]f, as might be the case with an automobile accident following the work-related accident, there is no causal relationship between the two injuries, any complications [ought] properly to fall outside the employer’s responsibilities.” 13 H. Alston Johnson, III, Louisiana Civil Law TREATISE: WORKERS’ COMPENSATION § 236 at 555 (4th ed.2002).
 

 The key question is the relationship between the second injury and the initial, work-related injury. The courts have held that an accident occurring away from work is compensable, where the work-related injury has not healed at the time of the accident, and as such, rendered the employee susceptible to further aggravating injuries.
 
 See Hughes v. General Motors Guide Lamp Division,
 
 469 So.2d 369, 376 (La.App. 2 Cir.1985) (Testimony of two physicians, plus that of lay witnesses, established an “overwhelming preponderance of the evidence” of a causal relationship between the two injuries.)
 

 Another example is
 
 Carter v. Rockwood Insurance Company,
 
 341 So.2d 595 (La.App. 2 Cir.1977), which arose when an employee’s continued weakness in her leg initiated by an on-the-job accident caused a fall in the bath tub. The second accident, which resulted during normal activity, was a natural and anticipatable consequence of the work-related accident. The work-related injury prevented plaintiff from catching herself and thereby was a contributing cause of the fall itself; the work-related injury caused plaintiff to fall with greater force than she otherwise would have, contributing to the severity of the fall; the work-related injury had caused osteoporosis of the leg bone and thereby contributed to the severity of the second injury. The court concluded the nature of the original knee injury was such that the chance of subsequent re-injury was a foreseeable risk and consequence.
 
 Carter,
 
 341 So.2d at 598-600.
 

 In the instant case, the court of appeal cited
 
 Kelly
 
 for the proposition that the employer is liable for medical expenses caused by aggravation of Buxton’s on-the-job injury, and Buxton relies on
 
 Kelly
 
 in his brief to this court. However, the factual situation in
 
 Kelly
 
 is significant. Kelly was a City of New Orleans policeman who was riding in a patrol car which was hit by a motorcycle.
 
 [4]
 
 He and his partner were
 
 *285
 
 on duty, answering an emergency call, when the substantial impact occurred. Kelly’s left shoulder dislocated and then pushed back into place, resulting in severe pain. According to the treating physician, Kelly’s ligaments were damaged as a result of the | ^automobile accident, and that accident, combined with an earlier injury to the same shoulder when Kelly was a police cadet, increased the possibility of future dislocations. A future dislocation did occur, while Kelly was swimming; it was undisputed that his swimming was not an on-the-job activity. This court held that Kelly’s subsequent shoulder dislocation that occurred off the job was a mere continuation and aggravation of his on-the-job injuries, not a new, unrelated injury.
 

 Nevertheless, Buxton relies on the general statement in Kelly that an “aggravation of a work-related injury is compensa-ble even if it occurs away from work.”
 
 Kelly,
 
 414 So.2d at 772.
 
 [5]
 
 He argues that the “foreseeability”
 
 [6]
 
 requirement enunciated in
 
 Dickerson v. Kroger,
 
 509 So.2d 813, 816 (La.App. 1 Cir.1987)
 
 [7]
 
 (and reiterated in
 
 Hollingsworth v. East Baton Rouge School Board,
 
 94-0518 (La.App. 1 Cir. 12/15/95), 666 So.2d 376),
 
 writ denied,
 
 96-0165 (La.3/15/96), 669 So.2d 422, is an added requirement never mentioned in the earlier jurisprudence, including
 
 \KKelly.
 
 This argument overlooks the factual situation which prompted the general statement in
 
 Kelly.
 
 This court explained that undisputed medical evidence proved that the first two on-the-job injuries “predisposed” Kelly to the swimming injury. The latter occurred while Kelly was still partially disabled and under treatment. Surgical correction was required following the swimming injury because of Kelly’s employment accidents.
 
 Id.
 

 In the instant case, the record contains no proof that the serious injuries from the cow accident were related to the on-the-job
 
 *286
 
 accident and injury. In Louisiana, as in the majority of states, there is a requirement that the subsequent injury flow from the work-related injury and not be caused by an intervening accident wholly unrelated to the work-related injury. 26 Suffolk U.L.Rev. at 532-533 n. 18. Kelly is illustrative: the subsequent injury flowed from the work-related injury, resulted from an every-day activity, and was not caused by an intervening accident unrelated to claimant’s employment. This court held that the surgery which became necessary because of the non-work related injury, was compensable because medical testimony indicated that there was a 75 percent probability that such an injury would occur because the policeman’s ligaments had been weakened by the work-related accidents. In the instant ease, there was no proof that Buxton was predisposed to injury by the motorcycle accident. Dr. Gun-derson was the only doctor to testify following the second accident; he stated in his deposition that the second injury, in his opinion, “probably made [the previous back injury] worse.” There was no evidence that the work-related injury predisposed Buxton to future injury such as disc problems in the lumbar region that appeared after the severe collision with the cow, but not before. In
 
 Kelly,
 
 further medical treatment was required because of the employment accidents, not because of an intervening automobile accident. In the instant case, the|i7only evidence of the necessity of surgery for a back injury stems from the subsequent collision involving the cow, not from the motorcycle accident.
 

 Simply stated, in
 
 Kelly,
 
 it was proven that the work-related injuries were a cause of the injury suffered away from work. Conversely, in this matter, there is no proof the work-related injury pre-disposed the claimant to the injuries sustained in the non-work-related accident or that medical treatment subsequent to the non-work-related accident was required because of the employment accident.
 

 As this court stated in
 
 Haughton v. Fireman’s Fund American Ins. Companies,
 
 355 So.2d 927, 929 (La.1978): “If an accident causes a disability from which a workman would have recovered except for further disability produced by a separate, intervening cause, there is no liability for compensation beyond the disability produced by the job connected accident.” However, “[w]hen there is an accident and a resulting disability without any intervening cause, it is presumed that the accident caused the disability.”
 
 Id.
 
 Haughton was employed as a common laborer. While on the job, he stumbled while carrying a heavy timber and fell, breaking his left thigh bone. He was hospitalized, and the fracture was surgically reduced and fixed with a steel plate and screws. Post-surgery tests suggested a bone marrow disorder, which was subsequently diagnosed as multiple myeloma. The break was thought to have been a “pathological fracture,” caused by weakening of the walls of the bone. In addition to the orthopedic treatment, Haughton was placed under the care of a hematologist for the control and treatment of the myeloma. The orthopedic surgeon ascribed a 25 percent residual disability to the left leg “as a result of the injury and subsequent surgery.” When the employer discontinued compensation benefits on the grounds that Haughton was totally disabled by the myeloma and not the broken leg, Haughton brought an action claiming workers’ compensation benefits 11sfor total disability allegedly caused by the work-related injury. The trial court judgment denying compensation was affirmed by the court of appeal.
 
 Haughton v. Fireman’s Fund American Ins. Companies,
 
 349 So.2d 385 (La.App. 4 Cir.1977).
 

 
 *287
 
 This court granted certiorari and reversed.
 
 Haughton,
 
 855 So.2d 927. We noted that causation is not necessarily and exclusively a medical conclusion. It is usually the ultimate fact to be found by the court, based on all the credible evidence. We found there was no evidence of an intervening cause. Nothing happened to Haughton after the accident except his failure to recover; he did not suffer a new accident or disease; the disease he had when the accident occurred contributed to the injury itself. In the instant case, the accident involving the cow is the new accident that was lacking in
 
 Haughton.
 

 We note that the appellate court in the instant case relied on the manifest error standard of review in its affirmation of the hearing officer’s decision to hold the employer liable for medical expenses incurred subsequently to the cow accident. Factual findings in workers’ compensation cases are subject to the manifest error rule.
 
 Winford v. Conerly Corporation,
 
 04-1278, p. 15 (La.3/11/05), 897 So.2d 560, 569. Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer.
 
 Taylor v. Hollywood Casino,
 
 41,196 (La.App. 2 Cir. 6/28/06), 935 So.2d 293;
 
 City of Shreveport v.
 
 Casciola, 43, 132 (La.App. 2 Cir.3/26/08), 980 So.2d 203.
 

 Under the manifest error rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable.
 
 Stobart v. State, Department of Transportation and Development,
 
 617 So.2d 880, 882 (La.1993). The manifest error standard applies even when the decision of the workers’ compensation hearing officer is based upon written reports, records, or | ^depositions.
 
 Bruno v. Harbert International, Inc.,
 
 593 So.2d 357, 361 (La.1992);
 
 Alexander v. Brookshire Grocery Company,
 
 42,855, p. 3 (LaApp. 2 Cir.1/9/08), 975 So.2d 100, 102,
 
 writ denied,
 
 08-0503 (La.4/25/08), 978 So.2d 367.
 

 Unlike
 
 Haughton, supra,
 
 this case presents evidence of an intervening cause; the accident involving the cow obviously had no relation to the job Buxton formerly held with the city. Buxton did not seek medical treatment for the initial injury during the two-year period between his last visit with Dr. Gunderson and the second accident; this substantial gap in treatment went wholly unexplained; the need for surgical intervention was never mentioned prior to the cow accident; the objective evidence was that before the second accident Bux-ton’s lower back discs were “normal” and after the second accident they were herniated. All of these facts were sufficient to refute the only testimony regarding causation noted by the hearing officer in his oral reasons for judgment,
 
 ie.,
 
 the oblique statement by Dr. Gunderson that the cow accident “probably made” the on-the-job back injury worse.
 

 Thus, we reject claimant’s argument that proof of any aggravation of an on-the-job injury by a subsequent accident which is not job related is sufficient to make the employer liable for continued compensation benefits.
 
 [8]
 
 In this matter, there was simply insufficient proof that the work-related injuries were a cause of the injury suffered away from work, and the hearing officer was manifestly erroneous in failing to so find.
 

 
 *288
 
 In addition to claimant’s argument that the foreseeability requirement was not mentioned by this court in
 
 Kelly
 
 or otherwise, he argues that in 1989, the legislature 12n“overruled” the foreseeability requirement articulated in
 
 Dickerson, supra,
 
 by an amendment to LSA-R.S. 23:1101, which added the following provision:
 

 C. For purposes of this Section, “third person” shall include any party who causes injury to an employee at the time of his employment or at any time thereafter provided the employer is obligated to pay benefits under this Chapter because the injury by the third party has aggravated the employment related injury.
 

 Claimant concludes that “the standard is now simply whether or not the injury caused by the third party aggravated the employment related injury. If so, the employer is obligated to pay benefits.” Claimant has cited no authority for this conclusion other than LSA-R.S. 23:1101.
 

 We find this argument untenable. Louisiana Revised Statutes 23:1101 is entitled “Employee and employer suits against third persons; effect on right to compensation.” Obviously, this legislation addresses employee and employer rights and remedies against third-person tortfeasors. This legislation, by its terms, does not confer new rights on employees
 
 vis-a-vis
 
 their employers. In the situation presented by the instant case, there is no third person.
 
 [9]
 

 Thus, we hold that the record before us does not support the decision of the hearing officer to hold Iowa liable for continued treatment of Buxton’s lower back injuries by Dr. Gunderson, and we reverse that portion of the judgment.
 
 [10]
 

 We turn now to the issue of Bux-ton’s entitlement to TTD benefits. Again, we are bound by the manifest error standard of review.
 

 |2iA workers’ compensation claimant seeking temporary or permanent total disability benefits bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment.
 
 Greis v. Lake Charles Memorial Hospital,
 
 97-1258, p. 5 (La.App. 3 Cir.3/6/98), 709 So.2d 986, 988,
 
 writs denied,
 
 98-0937, 98-0939 (La.5/15/98), 719 So.2d 467. This burden of proof is statutorily mandated. Louisiana Revised Statute 23:1221 provides, in pertinent part:
 

 Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
 

 (1) Temporary total.
 

 (a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
 

 
 *289
 
 (c) For purposes of Subparagraph (l)(a) ...
 
 compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence,
 
 unaided by any presumption of disability,
 
 that the employee is physically unable to engage in any employment
 
 or self-employment, regardless of the nature or character of the employment or self-employment,
 
 including
 
 but not limited to any and all odd-lot employment, sheltered employment, or
 
 employment while working in any pain,
 
 notwithstanding the location or availability of any such employment or self-employment. [Emphasis added.]
 

 Thus, to be entitled to TTD benefits a claimant must present clear and convincing evidence that he is unable to work at any type of employment whatsoever because of his physical condition; the fact that he would be working in pain is not proof that he is totally disabled.
 

 The judgment rendered in favor of Bux-ton awards him temporary and total disability benefits in the amount of $327.24 per week, beginning September 1, 2004. 122The only evidence relating to that date is Dr. Kang’s notation in a handwritten report introduced by Buxton at the first trial; Dr. Kang wrote that Buxton needed “time to recover.”
 

 The hearing officer’s decision to award TTD benefits beginning on September 1, 2004, for an injury incurred in a May 7, 2004 on-the-job accident is an acknowledgment that the claimant did not prove disability prior to that time. Dr. Kang’s report and his deposition testimony made it clear that his treatment of Buxton from the date of the accident until his last visit on August 16, 2004, was based on Buxton’s subjective complaints of back pain; the doctor even acknowledged consideration of Mrs. Buxton’s opinion regarding her husband’s need for an MRI of the lower back. Consistently, Dr. Kang’s treatment of Bux-ton was geared toward alleviating the patient’s pain.
 

 Although counsel for claimant was present at Dr. Kang’s deposition on June 15, 2005, he did not question the doctor. Thus, Dr. Kang never testified concerning Buxton’s claimed disability. Instead of any testimony confirming the employee’s claimed disability, Dr. Kang testified that Buxton wanted to go back to work on July 8, 2004, but the doctor did not want him to do heavy duty.
 

 Similarly, both Buxton and his wife testified at the first trial on June 15, 2006. Buxton stated he had not worked since the May 7, 2004, because of his back and neck pain. Mrs. Buxton confirmed that her husband suffered from back pain since the accident. Neither witness gave any other reasons for his not being employed.
 

 No other evidence concerning the period of time from May 7, 2004, until September 1, 2004, was introduced at the second trial, despite the appellate court’s statement in
 
 Buxton I
 
 that the record was insufficient for the court to make a determination of the disability issue.
 

 I23TI1US, the hearing officer’s decision to award TTD benefits from September 1, 2004, was based on one statement by Dr. Kang that he needed “time to recover.” Clearly, this was not clear and convincing evidence of total disability. The hearing officer committed manifest error in finding Buxton had carried his burden of proof to entitle him to benefits beginning on that date.
 

 Having found the date chosen by the hearing officer for the start of TTD benefits was manifestly erroneous, we have examined the record
 
 de novo
 
 to determine whether claimant satisfied his burden of proving total disability by evidence of fac
 
 *290
 
 tors or events occurring subsequent to September 1, 2004.
 

 The only other medical evidence relating to Buxton’s claimed disability consists of Dr. Gunderson’s medical records and his deposition testimony. It is undisputed that Buxton was totally disabled following the cow accident, but we have decided that issue adversely to claimant. Therefore, the only relevant portions of Dr. Gunder-son’s records and/or testimony are those that relate to the claimant’s condition prior to the cow accident.
 

 Dr. Gunderson examined Buxton twice prior to the cow accident, on April 26, 2005, and again in May of 2005. The record is silent as to the reason for Bux-ton not returning to Dr. Gunderson or not pursuing the tests that the doctor recommended at the May visit. The only objective evidence that supported Buxton’s complaints of pain were the observations summarized by Dr. Gunderson,
 
 ie.,
 
 diminished sensation in the S-l dermatone on the right; the right Achilles reflex was absent; and tenderness about the L3-L5 level on both sides.
 

 After examining the MRI films and report of January 11, 2005, Dr. Gunderson stated the lumbar discs were “normal,” with some narrowing of the spinal column that was a congenital condition.
 

 I^Dr. Gunderson was deposed on December 4, 2007, when he was examined by counsel for claimant and counsel for the employer. Counsel for claimant asked a few questions about recuperation time if Buxton were to have the neck and back surgery to repair the injuries incurred in the cow accident. In light of our decision regarding the injuries incurred in the cow accident, that testimony is not relevant to the issue of TTD benefits. There is no testimony in the deposition related to the issue of the patient’s disability prior to the cow accident.
 

 As to the issue of disability, claimant introduced the report of the April 26, 2005 visit with Dr. Gunderson which, as previously noted, has a checkmark at “IS
 
 NOT
 
 ABLE TO RETURN TO WORK” and a written remark of “no duty.” Again, in May of 2005, Dr. Gunderson noted “no duty.” Those reports, along with the testimony in the first trial of claimant and his wife concerning claimant’s inability to work because of pain, comprise the entire case for the claimant regarding entitlement to TTD benefits. Claimant and his wife apparently chose not to testify in the second trial despite the appellate court’s observation that the record from the first trial was insufficient for a decision on disability.
 

 Claimant’s meager evidence is insufficient to satisfy his burden pursuant to LSA-R.S. 23:1221(l)(e).
 

 Further, as the employer has pointed out, claimant’s evidence has been refuted by several factors. First, claimant’s application for unemployment compensation benefits contains an acknowledgment that he was able to work. Next, in July 2004 claimant reported to Dr. Kang that he was ready to go back to work. He renewed his complaints of pain to Dr. Kang on August 16, 2004, four days following the denial of his application for unemployment compensation benefits. The 2005 MRI showed “normal” discs in the lower back, as contrasted to the bulging discs shown in the 2007 IgfiMRI, subsequent to the second accident. Finally, between claimant’s visit in May 2005 to Dr. Gunderson and the cow accident, there was a unexplained gap in claimant’s seeking medical treatment of over two years duration that went unexplained, despite his opportunity to testify at a second trial. When Buxton returned to Dr. Gunderson after the cow accident, he attempted to relate his back injury to
 
 *291
 
 the on-the-job accident. Nevertheless, Dr. Gunderson agreed his symptoms were significantly different in 2007 than they were in 2005, when he had last seen Buxton.
 

 As this court has previously stated, a workers’ compensation claimant must meet his burden of proof, despite the fact that procedural rules are construed liberally in favor of the claimant.
 
 Prim,
 
 297 So.2d at 422. If the evidence leaves probabilities equally balanced or shows only possibilities, his case must fail.
 
 Id.
 
 Especially in light of the enhanced burden of clear and convincing evidence, our
 
 de novo
 
 review of the record convinces us that the evidence of temporary and total disability is insufficient to support the hearing officer’s award of TTD benefits. Accordingly, we reverse the judgment in favor of Marvin W. Buxton in its entirety.
 

 REVERSED.
 

 [1]
 

 . Judge Benjamin Jones, of the Fourth Judicial District, assigned as Justice
 
 Pro Tempore,
 
 participating in the decision.
 

 [2]
 

 . The court of appeal also noted that as a result of the search, a criminal charge was filed against Buxton's wife.
 

 [3]
 

 . LSA-R.S. 23:1081 provides employers with several defenses to a claim by an employee. Paragraph (l)(b) provides that an employee may not recover compensation if his injury was caused by intoxication, unless the employee’s intoxication resulted from activities which were in pursuit of the employer's interests or in which the employer procured the intoxicating beverage or substance and encouraged its use during the employee’s work hours. Paragraph (5) provides an employee is presumed to be intoxicated if there is evidence of use of a nonprescribed controlled dangerous substance. Paragraph (7)(a) provides an employer has the right to order drug testing immediately after the on-the-job accident. According to Paragraph (7)(b) and Paragraph (12), if the employee refuses to submit to the test, the employer is entitled to the presumption that the work-related accident arose as a result of the employee's intoxication. Paragraph (12) also provides that once the presumption arises, the burden shifts to the employee to prove by a preponderance of the evidence that the intoxication was not a contributing cause of the accident.
 

 [4]
 

 . Similarly, the police units of both Kelly and Buxton were struck by a motorcycle. The similarity ends there.
 

 [5]
 

 . Buxton reads this sentence too broadly and out of context. It is not every aggravation of a work-related injury occurring away from work which is compensable.
 

 [6]
 

 . The word “foreseeability” is a legal term used to assist the courts in expressing the requirements of the general rule of causation. "Foreseeability” is the "quality of being reasonably anticipatable.” Black's Law Dictionary 660 (7th ed.1999).
 

 [7]
 

 . Dickerson's workers’ compensation insurer sought to recover the benefits it had paid plaintiff in connection with a non-work injury he sustained in a slip-and-fall in a grocery store; plaintiff re-injured the knee he had previously injured in a work-related accident. The insurer relied on LSA-R.S. 23:1101(B) which provides a cause of action against third party tortfeasors "to recover any amount which he has paid or becomes obligated to pay as compensation to such employee or his dependents” to "[a]ny person having paid or having become obligated to pay compensation under the provisions of this Chapter.” The court pointed out that this provision gave one who paid compensation benefits the right to recover from the tortfeasor. However, by its very terms, it applied only to injuries for which worker's compensation was payable, that is, work-related injuries. Citing
 
 Employer's Mutual Liability Ins. Co. v. Dixon,
 
 425 So.2d 885, 886 (La.App. 4 Cir.1983) and
 
 Allstate Ins. Co. v. Theriot,
 
 362 So.2d 1214, 1215 (La.App. 4 Cir.1978),
 
 rev’d on other grounds,
 
 376 So.2d 950 (La.1979), the court concluded;
 

 If, however, a subsequent injury away from work was foreseeable, and came about as a result of the work-related injury having predisposed the victim to future injury, the subsequent injury is compensable under worker's compensation law.
 
 Kelly v. City of New Orleans,
 
 414 So.2d 770, 772 (La.1982). We need not determine, however, whether this was the case in the present injury, since the parties stipulated that the injury was new, unforeseen, and not caused by the existing injury.
 

 Dickerson,
 
 509 So.2d at 816.
 

 [8]
 

 . It is difficult to determine from the record whether the hearing officer made a factual or legal error in holding the employer liable for medical expenses incurred after the cow accident. He never addressed causation of the second injury and/or the defense of intervening cause. However, out of an abundance of caution, we have applied the more stringent standard of review, the manifest error standard.
 

 [9]
 

 . It is undisputed that the second accident occurred when the vehicle Buxton was driving hit a cow. The record is silent concerning the particulars of the accident, other than the pictures that illustrate the severity of the collision. Nothing in the record before us indicates the existence of a third party, such as the owner of the cow. We have no basis on which to conclude that LSA-R.S. 23:1101 is relevant to disposition of the issues presented.
 

 [10]
 

 . Dr. Gunderson related the need for neck surgery solely to the cow accident. Thus, the portion of the judgment which we reverse casts the employer liable for medical treatment of the lower back only.