GUIDRY, J.
Un this workers’ compensation proceeding, the claimant appeals a judgment of the Workers’ Compensation Administration finding there was no causal connection between the claimant’s medical conditions and his workplace exposure to toxic chemicals. Finding the evidence presented supports the judgment, we affirm.
FACTS AND PROCEDURAL HISTORY
On April 24, 2001, International Maintenance Corporation (IMC)[1] employed the claimant, Sidney Jones, Jr., to work as a carpenter building scaffolding at a chemical plant in Westwego, Louisiana. While constructing a scaffold in the acrylonitrile unit of the plant, a technician flushed a vessel in the unit and released either hy *895 drogen cyanide or acrylonitrile into the area where Mr. Jones and a crew of other carpenters were building a scaffold. Mr. Jones ran from the area of the exposure and then collapsed. On being restored to consciousness, Mr. Jones and the other members of the carpentry crew that worked in the area of the chemical exposure were transported by ambulance to West Jefferson Medical Center to be examined. After being examined at the hospital, the employees were released to go home.
On returning to work the following day, Mr. Jones continued to feel unwell, and he specifically complained of having headaches, trouble breathing, and feeling weak. His immediate supervisor, Adam Landry, also complained of continued illness following the incident,[2] and as result, IMC transported the entire crew to Dr. David Reiss, the company doctor, to be examined. After examining the entire | screw, Dr. Reiss released them all to return to work, where they remained on the job for the rest of the day. The following day, however, Mr. Jones went to see his own family doctor and never returned to work thereafter.
On May 22, 2001, Mr. Jones filed a disputed claim for compensation (LDOL-WC-1008), seeking further medical treatment, wage benefits, and a determination of disability status. IMC answered the claim to admit that it employed Mr. Jones and that Mr. Jones was performing services in the course and scope of his employment at the time of the accident. In all other respects, however, IMC denied Mr. Jones’s claim.
Due to problems conducting discovery, changes in counsel, and the impact of Hurricane Katrina, the matter did not proceed to trial until November 23, 2009, at which hearing Mr. Jones represented himself in proper person. Following the hearing on Mr. Jones’s claim, the workers’ compensation judge (WCJ) found that the disability and various other medical conditions claimed by Mr. Jones were not caused by his workplace chemical exposure on April 24, 2001. Accordingly, the WCJ dismissed Mr. Jones’s claim with full prejudice in a judgment signed February 3, 2010, from which judgment Mr. Jones filed the instant appeal.
DISCUSSION
As in the proceedings below, Mr. Jones is pursuing the subject appeal in proper person. His brief to this court contains only a short statement labeled as “facts” and a list of three documents that Mr. Jones asserts counsel for IMC “never submitted” to the court of appeal. While Mr. Jones does make some assertions in the short statement, his brief clearly does not comply with the requirements of the Uniform Rules-Courts of Appeal, Rule 2-12.4. It has no assignments of error, no record references, no briefing of arguments, and no jurisdictional statement. However, the courts of this state have considered briefs in improper form when filed by pro se claimants. See Hale v. Labor Ready, 08-719, p. 1 (La.App. 3d Cir.12/10/08),4 999 So.2d 293, 294-95. Accordingly, we will consider the merits of Mr. Jones’s appeal, and specifically, the issue of whether the WCJ erred in finding that Mr. Jones’s existing medical conditions were not caused by his workplace chemical exposure. See La. C.C.P. art. 2164.
An employee is entitled to compensation benefits if he or she suffers a *896 personal injury by an accident arising out of and in the course of employment. La. R.S. 23:1031. Under this statute, a successful claimant must prove a personal injury that is the result of an accident, which accident arises out of and was in the course of employment. Thus, the chain of causation required under the statute is that the employment causes the accident, the accident causes injury, and the injury causes disability. Buxton v. Iowa Police Department, 09-0520, pp. 11-12 (La.10/20/09), 23 So.3d 275, 283.
The test for determining the causal relationship between an accident and subsequent injury is whether the claimant proved through medical or lay testimony that it is more probable than not that the accident caused the subsequent injuries. Elder v. Sierc Inc. Oil & Fuel, 10-144, p. 8 (La.App. 5th Cir.10/12/10), 51 So.3d 54, 59. The employee has the burden of proving, by a preponderance of the evidence, that the resulting disability is related to an on-the-job injury. Buxton, 09-0520 at 12, 23 So.3d at 283.
In reviewing the WCJ’s factual determinations, including whether the employee has discharged his burden of proof, this court is bound by the manifest error standard of review. Under this two-part test, the appellate court must determine from the record whether there is a reasonable factual basis for the finding and whether the record further establishes that the finding is not manifestly erroneous. Roussell v. St. Tammany Parish School Board, 04-2622, p. 9 (La.App. 1st Cir.8/23/06), 943 So.2d 449, 457, writ not considered, 06-2362 (La.1/8/07), 948 So.2d 116.
| sin reviewing the record before us, particularly the testimony of Dr. William Nas-setta, an internist accepted by the WCJ as an expert in the field of occupational and environmental medicine, we find the evidence amply supports the WCJ’s findings in this matter and thus, her findings are not clearly wrong.
Dr. Nassetta testified that he holds a bachelor’s degree in chemistry and a medical degree; he had completed a residency in internal medicine and a second residency in occupational and environmental medicine. Dr. Nassetta also testified that he holds a master’s degree in public health. In reviewing scientific literature regarding the particular diseases caused by exposure to hydrogen cyanide and acrylonitrile from an epidemiological standpoint, Dr. Nasset-ta opined that, based on the concentrations of the chemicals to which Mr. Jones was exposed,[3] the most significant injury the exposure could have caused. Mr. Jones was a transient, minor, irritative-type symptoms. Therefore, considering Mr. Jones’s specific medical history, Dr. Nas-setta opined the following:
[Mr. Jones] had symptoms acutely initially that are certainly consistent with what one would expect, and he got better, I think, as was documented in the records. As you look through the records, after a couple of days to a couple of weeks, his symptoms were improving, his shortness of breath. Like, here, I have documented on May 2nd, you know, some — a few days after the event, he had no more shortness of breath and no more cough. And this is what Dr. Waguespack — he felt comfortable enough at that point in time to say, you know, follow up in a month. So that’s what I would expect in this type of thing.
The issue was going on here, as not uncommonly happens, is that ... when you — when an event like this brings you into the medical system and tests are *897 done, other things are discovered at the same time, and that’s what happened is, he had hypertension to begin with, and now they’re paying more attention to it. He had a blood test done for the first time for his thyroid, because someone had discovered a goiter, and his Graves disease was discovered. And I can understand how in his mind he conflates these events, that I never had these things before, so they must be related now, and that’s just — you know, they are just not related, I mean, other than they happened in the same person. There were things that were going to be ultimately _J^discovered anyway but are things that are not related to the particular exposure and how he was exposed in this circumstance.
At the hearing for this matter, IMC placed into evidence the medical records and deposition testimony of the physicians who treated Mr. Jones relative to his workers’ compensation claim,[4] as well as Dr. Nassetta’s report and company investigative reports regarding the chemical release. Considering all the evidence presented, the WCJ agreed with Dr. Nasset-ta’s opinion that the chemical exposure did not cause the lingering medical conditions of which Mr. Jones complained. The WCJ found Mr. Jones’s medical conditions were due in large part to his conditions of Graves disease, post-ablation hypothyroidism, and hypertension.
Having thoroughly reviewed the record, we find there is reasonable factual support for the WCJ’s finding that Mr. Jones failed to establish by a preponderance of the evidence that his complained-of medical conditions were caused by the chemical exposure. Accordingly, the WCJ’s determination that Mr. Jones failed to meet his burden of proving that the chemical exposure caused the lingering medical conditions from which he continues to suffer is not manifestly erroneous.[5]
CONCLUSION
For the foregoing reasons, we affirm the judgment. All costs of this appeal are assessed to the claimant, Sidney Jones, Jr.
AFFIRMED.

. IMC is now known as Turner Industries Group, LLC.

. Mr. Landry also filed a workers' compensation claim regarding the incident, and his claim was consolidated with the claimant’s until the point of trial, at which time the workers’ compensation judge severed the actions and heard the two claims separately, albeit on the same date. Mr. Landry testified for the claimant at his hearing.

. According to company records, one pound of hydrogen cyanide and one pound of acryl-onitrile were released into the air on the date of the accident, which translated into air concentration levels of between 5.5 parts per million to 30.2 parts per million.

. Pursuant to a motion filed with the trial court, our record on appeal was supplemented with the proffer Mr. Jones offered in the hearing below. The proffer consists of a "Notice of Decision” from the Social Security Administration, Office of Disability Adjudication and Review, and medical notes from Dr. Kenneth Williams, a physician who specializes in physical medicine and rehabilitation, who examined and treated Mr. Jones in relation to his Social Security claim.

. Moreover, even considering the evidence proffered by Mr. Jones, under the manifest error standard of review, where the parties present conflicting evidence regarding the fact to be established, the factfinder’s choice between the evidence can never be manifestly erroneous or clearly wrong. See Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993).