**EARL ALPHONSO V**         *       **NO. 2020-CA-0276**

**VERSUS**          *

                                     **COURT OF APPEAL**

**EXXON MOBIL**        *
**EXXON MOBIL RISK**             **FOURTH CIRCUIT**
**MANAGEMENT, INC.**     *

                                     **STATE OF LOUISIANA**

               * * * * * * *

APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 18-00667, DISTRICT "SEVEN"
Honorable Shannon Bruno Bishop, Workers Compensation Judge
* * * * * *
**JAMES F. MCKAY III**
**CHIEF JUDGE**
* * * * * *

(Court composed of Chief Judge James F. McKay III, Judge Edwin A. Lombard, Judge Roland L. Belsome)

LEO CAILLIER III
CAILLIER & ASSOCIATES, LLC
711 2nd Street
Gretna, Louisiana 70053
       COUNSEL FOR PLAINTIFF/APPELLEE

B. SCOTT COWART
GEORGE O. LUCE
TAYLOR, WELLONS, POLITZ & DUHE, APLC
4041 Essen Lane, Suite 500
Baton Rouge, Louisiana 70809
       COUNSEL FOR DEFENDANT/APPELLANT

                           **AFFIRMED IN PART AND REVERSED IN PART**

                               **DECEMBER 9, 2020**

This is a workers' compensation case where a claimant re-injures a knee previously injured in an accident at work. The court below found the employer liable for the claimant's subsequent injury and guilty of not reasonably controverting the employee's claim for compensation. The court awarded damages, penalties, attorney fees and certain costs related to the case. We affirm in part and reverse in part.

**FACTS AND PROCEDURAL HISTORY**

On April 1, 2015, Earl Alphonso V injured his left knee when he was involved in a work accident while in the employ of Exxon Mobil Corporation. Mr. Alphonso's injuries consisted of a dislocated kneecap, torn patella tendons, torn ACL, and a torn PCL. Mr. Alphonso underwent surgery for these injuries in May of 2015.

Following the initial surgery, Mr. Alphonso continued to report instability and pain in his left knee. Mr. Alphonso's knee gave out at home in October of 2015. It was the opinion of Dr. Scott Buhler, Mr. Alphonso's orthopedic surgeon,

1

that Mr. Alphonso had not fully healed from his surgery and another surgery would be required. Mr. Alphonso underwent a second surgery in April of 2016.

Even after his second surgery, Mr. Alphonso continued to complain of pain and instability in his left knee. He received injections and even underwent arthroscopic surgery in February of 2017.

In December of 2017, Mr. Alphonso re-injured his left knee at home while hanging Christmas lights when he stepped off a ladder and felt a pop in his knee. Dr. Buhler diagnosed Mr. Alphonso with suspected re-aggravation of the injuries he sustained in his April 2015 work accident. The following June, Mr. Alphonso had a total reconstruction of the MPFL.

On January 29, 2018, Mr. Alphonso filed a disputed claim for compensation against his employer. Following discovery and court ordered mediation, the matter proceeded to trial on February 20, 2019. After the conclusion of trial, the trial court allowed the parties to submit post-trial briefs before rendering its judgment on May 30, 2019.

The trial court rendered judgment in favor of Mr. Alphonso and against Exxon. The trial court found that Mr. Alphonso's December 12, 2017 injuries were a development of his original April 1, 2015 work accident because the December 12, 2017 injury was foreseeable and came about as a result of the April 1, 2015 injuries predisposing him to future injury. The trial court also found that Mr. Alphonso was disabled from work and awarded him eight (8) weeks of indemnity benefits following his June 12, 2018 surgery. The trial also awarded

Mr. Alphonso ongoing reasonable and necessary medical treatments for the injuries he sustained on December 12, 2017. The trial court also recognized that Exxon was entitled to a credit for benefits paid through the short-term disability program. The trial court further ordered Exxon to pay $6000.00 for failure to authorize medical treatment, failure to pay medical expenses, and failure to pay indemnity benefits. The trial court also awarded Mr. Alphonso attorney's fees of $7,500.00. Finally, the trial court assessed Exxon with interest from the date of judgment and costs "to be assessed at a subsequent hearing."

Notice of the signing of the judgment was mailed to the parties on May 31, 2019. Following a motion for new trial, the court ordered and the parties agreed to attempt to resolve the issues of costs and submit the remaining disputed issues by briefs with exhibits. On February 18, 2020, the trial court ordered Exxon to pay $8,481.47 for costs and expenses incurred by Mr. Alphonso's attorney in accordance with La. R.S. 13:4533. Exxon now appeals the trial court's judgment.

**DISCUSSION**

On appeal, Exxon raises the following assignments of error: (1) the Workers Compensation Judge (WCJ) erred by holding Exxon responsible for Mr. Alphonso's 2017 MPFL injury, because the first injury had long since healed and the new injury resulted from an intervening accident that was not caused by Mr. Alphonso's predisposition to re-injury; (2) the WCJ erred by awarding penalties and attorney's fees, because Exxon reasonably controverted the claim based on Mr. Alphonso's injuring himself at home rather than at work, several years after his

3

earlier work-related accident; and (3) the WCJ erred by awarding Mr. Alphonso several items of court costs that are not provided for by positive law.

In its first assignment of error, Exxon contends that the trial court erred by holding it responsible for Mr. Alphonso's 2017 knee injury, because his first injury had healed and his new injury was not caused by a predisposition to re-injury but by an intervening accident. This is a question of fact.

In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La. 1993). "Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Id. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Id. at 883. "When findings are based on determinations regarding the credibility of witnesses, the manifest error – clearly wrong standard demands great deference to the trier of fact's findings." Rosell v. ESCO, 549 So.2d 840,844 (La. 1989) (citations omitted) Only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Id. Where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear

4

wrongness even in a finding purportedly based upon a credibility determination. Id. at 844-45. But where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." Id. at 845.

To support its position, Exxon relies to a great extent on the Louisiana Supreme Court's opinion in the case of Buxton v. Iowa Police Dept., 2009-0520 (La. 10/20/09), 23 So.3d 275, although, it admits that "the analogy to Buxton is a bit obscured in the instant case." In any event, Buxton can be distinguished from the case at bar. In Buxton, we have a claimant who aggravates a back injury caused by a work-related accident when he has involved in a second accident where he collided with a cow. This was the aggravation of a pre-existing injury by an independent later accident. In the instant case, Mr. Alphonso continued to have problems with his left knee after his work-related accident and subsequent surgeries. In fact, the WCJ believed that the weakened condition of Mr. Alphonso's knee was a cause of his 2017 accident. As such, his 2017 accident and resulting injury could be related back to his work accident and was therefore the aggravation of his on-the-job injuries, not a new, unrelated injury. *See* Kelly v. City of New Orleans, 414 So.2d 770 (La. 1982) (aggravation of a work-related injury is compensable even if it occurs away from work).

An employee is entitled to compensation benefits if he or she suffers a personal injury by an accident arising out of and in the course of employment. La. R.S. 23:1031. The medical evidence supports the position that Mr. Alphonso's

latest injury was related to his original work injury. He had a history of continuous complaints concerning his left knee since April of 2015. Dr. Curtis Partington, the radiologist who reviewed Mr. Alphonso's MRIs, testified that claimant's patella was not back to where it was supposed to be and the ligament was thin at the time of the December 2017 accident.

As stated above, whether the 2015 work accident caused Mr. Alphonso's 2017 accident and the aggravation of his knee injury is a question of fact. Based on the record before this court, we cannot find the trial court's ruling to be manifestly erroneous or clearly wrong in that regard.

In its second assignment of error, Exxon contends that the WCJ erred when she awarded penalties and attorney fees because Exxon had reasonably controverted Mr. Alphonso's claim. Pursuant to La. R.S. 23:1201, penalties and attorney fees for failure to timely pay benefits shall be assessed, unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control. Based on the factual and medical evidence, the trial court found that Mr. Alphonso's claim was not reasonably controverted. The trial court found that the medical evidence clearly showed that Mr. Alphonso's December 2017 accident was related to the original April 2015 accident. The trial court also found that there was a lack of evidence to dispute the causal connection between the two accidents and the medical testimony supported causation. As such, the trial court awarded Mr. Alphonso $6,000.00 in penalties and awarded attorney fees in the amount of $7,500.00. Considering our position

6

regarding the appellant's first assignment of error, we cannot hold that either the trial court's finding or its award of penalties and attorney fees was clearly wrong or manifestly erroneous.

In its third and final assignment of error, Exxon contends that the WCJ erred by awarding Mr. Alphonso several items of court costs that are not provided for by positive law. "[O]nly costs provided for by positive law are taxable against the party cast in judgment," and "the types of costs recoverable as court costs are narrowly defined by statute." Waters v. Dept. of Soc. Servs., 2008-0977, p. 50 (La.App. 4 Cir. 6/17/09), 15 So.3d 1128, 1162 (citations omitted). These expenses are limited to "[t]he costs of the clerk, sheriff, witnesses' fees, costs of taking depositions and copies of acts used on the trial, and all other costs allowed by the court." La. R.S. 13:4533.

In the instant case, the trial court awarded Mr. Alphonso several items of court costs that are not provided for by positive law. These included $223.00 for the transcript of Mr. Alphonso's discovery deposition and $1,500.00 for the costs of Dr. Partington's video deposition, neither of which were used at trial. The costs of a deposition not used at trial may not be taxed as costs. *See* Brecheen v. News Group, L.P., 11-1173, p. 37 (La.App. 5 Cir. 12/11/12), 105 So.3d 1011, 1035; La. R.S. 13:4533.

Other improperly taxed costs included $636.82 in airfare and $480.70 in hotel expenses for Mr. Alphonso's counsel traveling to Houston to depose the claims adjuster, John Dill. The costs of traveling to take a deposition "do not

7

properly come within the costs of depositions made taxable by R.S. 13:4533." Succession of Franz, 139 So.2d 216, 219 (La. 1962). "[W]hile the cost of the deposition itself is a proper item to be taxed as costs, travel expenses of a litigant is not." Curry v. Vallot, 271 So.2d 711, 714 (La.App. 1 Cir. 1972) (citation omitted).

The trial court also improperly taxed costs of $870.00, which included out-of-court work performed by Dr. Partington in interpreting MRIs. "Where a party seeks to base an expert's fee on out-of-court work, the law requires a contradictory and full hearing," and "[t]he expert must testify at the trial of the rule and be subject to cross-examination, unless the parties stipulate to the specifics and costs of the out-of-court work." Dakmak v. Baton Rouge City Police, 2012-1850, pp. 5-6 (La.App. 1 Cir. 9/4/14), 153 So.3d 511, 515. In the instant case, Mr. Alphonso never requested a rule seeking to adduce testimony from Dr. Partington; all he offered was Dr. Parington's bill and his attorney's assertions.

In all other respects, we find no error in the trial court's taxing of costs in this case.

**CONCLUSION**

For the above and foregoing reasons we affirm the judgment of the court below regarding liability as well as its award of penalties and attorney fees. However, we reverse the trial court's judgment regarding the taxing of several items of cost (specifically listed above) to Exxon. As such, we find the amount of costs taxed to Exxon should be reduced by $3,710.52 (and any interest associated

8

with this principal amount).  In all other respects, we affirm the judgment of the trial court.

**AFFIRMED IN PART AND REVERSED IN PART**